2004 ME 130

**Hannah O'TOOLE**

v.

**CITY OF PORTLAND.**

Supreme Judicial Court of Maine.

Submitted On Briefs: July 9, 2004.

Decided: Oct. 27, 2004.

David A. Lourie, Esq., Cape Elizabeth, for plaintiff.

Charles A. Lane, Esq., City of Portland, Portland, for defendant.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] The City of Portland appeals from a judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) vacating the City of Portland Zoning Board of

Appeals' denial of Hannah O'Toole's application for a practical difficulty variance. The City argues that the judgment should be vacated and the Board's decision affirmed because O'Toole failed to establish that her need for a variance was due to the unique circumstances of her property and not to the general condition of the neighborhood, and that no other feasible alternative was available to her except a variance. We conclude that, despite the fact that the Board erred as a matter of law in determining the general condition of the neighborhood, O'Toole failed to establish that her need for a variance was due to the unique circumstances of her property. We also reject O'Toole's argument that the Board's decision was arbitrary and that the proceeding was "poisoned" by the advice provided by the Board's attorney. Accordingly, we vacate the Superior Court's judgment and remand to the Superior Court for entry of a judgment affirming the order of the Board.

## I. BACKGROUND

[¶ 2] Hannah O'Toole and her sister own two undeveloped, contiguous lots on Hampton Street in Portland. Hampton Street is a "paper street," meaning a dedicated, but unconstructed and unaccepted street, located in Portland's R–3 residential zone. O'Toole and her sister own Lots 9 and 10 on the relevant municipal tax map. These are two of many similar parcels in the neighborhood that were subdivided in the 1920s into 30' × 100' lots. O'Toole would like to build the road as depicted on the tax map and a residence on the area of the combined lots. In order to obtain approval to build, she needs a variance because the lot width[1] of the combined lots is only sixty feet, and a

minimum lot width of sixty-five feet is required for lots of record in the R–3 zone. Portland, Me., Code § 14–90(f) (Mar. 24, 2004).

[¶ 3] O'Toole sought a practical difficulty variance pursuant to section 14–473(c)(3) of the City's code of ordinances. Portland, Me., Code § 14–473(c)(3) (Mar. 24, 2004). The Board conducted a public hearing, at which it was established that a number of the 30' × 100' lots in the neighborhood have been combined with contiguous lots to satisfy the minimum lot width and area requirements. It was also established that at least four of the 30' × 100' lots are undeveloped and cannot be combined to meet the sixty-five-foot lot width requirement. This is true of Lots 7 and 8 on Hampton Street in addition to O'Toole's lots.

[¶ 4] Based on the information offered by O'Toole, the Board was able to identify the current configuration of only about half of the lots in the two-block area adjacent to Hampton Street. The record does not establish the extent to which there are still thirty-or sixty-foot-wide lots that cannot be developed other than to suggest that lots that have been, or can be, aggregated to meet the minimum lot width requirement predominate.

[¶ 5] The Board voted 4–2 to deny the variance, concluding that O'Toole failed to meet her burden of proof that (1) her need for a variance was due to the unique circumstances of her property and not to the general condition of the neighborhood, and (2) there were no other feasible alternatives available to her, other than a variance. The Board found that O'Toole's lots are not unique because the general condition of the neighborhood is one of "adja-

1. "Lot width" is defined as the "distance parallel to the front of the building measured between side lot lines through that part of the principal building where the lot is narrowest." Portland, Me., Code § 14–47 (Mar. 24, 2004).

cent, un-built parcels, thirty feet wide." The Board also found that O'Toole did not exhaust all feasible alternatives because she "made no attempt to acquire additional property sufficient to alleviate the need for a variance."

[¶ 6] O'Toole appealed to the Superior Court pursuant to M.R. Civ. P. 80B. The court decided that the Board misapplied the test for approving a practical difficulty variance. With respect to the general condition of the neighborhood criterion, the court concluded that the Board improperly based its decision "on the manner in which lots in the neighborhood were divided up in the 1920s, rather than looking at the present day ownership of, and building patterns on, the lots." The court found that, in light of the present day conditions of the neighborhood, O'Toole's lots are unique. With respect to the no other feasible alternatives criterion, the court concluded that "[w]hether the abutting land was available to [O'Toole] and whether [she] made any attempt to purchase the abutting land are irrelevant to the determination of whether feasible alternatives were available."

[¶ 7] The City appeals from the Superior Court's judgment.

## II. DISCUSSION

[¶ 8] When the Superior Court has acted as an intermediate appellate court, we review the operative decision of the municipality. *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27, 29. "When a zoning board of appeals acts as the tribunal of original jurisdiction as

both fact finder and decision maker, we review its decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 15, 831 A.2d 422, 427.

[¶ 9] This case involves a request for a practical difficulty variance. Practical difficulty variances are addressed in 30–A M.R.S.A. § 4353(4–C) (Supp.2003), which authorizes municipalities to adopt ordinances that permit the granting of variances from dimensional standards by applying a "practical difficulty" test. The test contains several factors, only two of which, subsections 4–C(A) and (D), are at issue in this appeal:

4–C. Variance from dimensional standards. A municipality may adopt an ordinance that permits the board to grant a variance from the dimensional standards of a zoning ordinance when strict application of the ordinance to the petitioner and the petitioner's property would cause a practical difficulty and when the following conditions exist:

A. The need for a variance is due to the unique circumstances of the property and not to the general condition of the neighborhood; [and]

. . . .

D. No other feasible alternative to a variance is available to the petitioner.

30–A M.R.S.A. § 4353(4–C)(A), (D). Portland has adopted an ordinance permitting the granting of practical difficulty variances that is nearly identical to section 4353(4–C). Portland, Me., Code § 14–473(c)(3)(a)(1), (4).[2]

---

2. The pertinent sections of the ordinance are as follows:

(3) *Practical difficulty variance:*

a. Notwithstanding the provisions of subsections 14–473(c)(1) and (2) of this section, the board of appeals may grant a variance from the dimensional standards

of this article when strict application of the provisions of the ordinance would create a practical difficulty, as defined herein, and when all the following conditions are found to exist:

1. The need for a variance is due to the unique circumstances of the property,

[¶ 10] Turning to the City's appeal, we examine (A) whether the Board properly found that O'Toole failed to prove that her need for a variance was due to the unique circumstances of her property and not to the general condition of the neighborhood, and (B) O'Toole's assertion that the Board's decision was arbitrary and that the proceeding was "poisoned" by the advice provided by the Board's attorney.

A. General Condition of the Neighborhood and Unique Circumstances of the Property

[¶ 11] The City contends that the Board properly found that O'Toole failed to prove that her need for a variance was due to the unique circumstances of her property and not to the general condition of the neighborhood. 30–A M.R.S.A. § 4353(4–C)(A); Portland, Me., Code § 14–473(c)(3)(a)(1). In determining whether the Board applied this standard correctly, it is necessary to consider the hearing record relative to the standard's two key elements: (1) "general condition of the neighborhood," and (2) "unique circumstances of the property."

1. General Condition of the Neighborhood

[¶ 12] At the hearing, members of the Board questioned whether the general condition of the neighborhood should be ascertained from the perspective of present conditions or from that of the original conditions of the neighborhood. Based on its written findings of fact, the Board apparently decided that it should use the original conditions of the neighborhood as the benchmark for determining the neigh-

and not to the general conditions in the neighborhood; [and]
. . . .
4. No other feasible alternative is available to the applicant, except a variance[.]

borhood's general condition. The Board's Finding # 1 states:

The Appellant sought a variance of lot width because his two thirty foot lots, when combined, failed to meet the minimum lot width requirements in the R–3 zone. However, the general condition of lots in the neighborhood of Hampton Street, are of the same character as CBL 339–C–09 & 010, namely that they are adjacent, un-built parcels, thirty feet wide. The Appellant's lots are not unique in this regard but rather reflect the general condition in the neighborhood.

[¶ 13] The Board's finding that "the general condition of lots in the neighborhood of Hampton Street ... [is] of the same character as [O'Toole's lots], namely that they are adjacent, un-built parcels, thirty feet wide" compels the conclusion that the Board was looking at the original conditions of the neighborhood as opposed to the present conditions. Otherwise, the Board's finding is insupportable. The current ownership trend in the Hampton Street neighborhood is toward the consolidation of two or more of the smaller original lots into a larger, developed lot that satisfies the sixty-five-foot width requirement. Accordingly, based on present conditions, the Board's finding regarding the general condition of the neighborhood is not supported by substantial evidence.

[¶ 14] The meaning of "general condition of the neighborhood" presents a question of law that we review de novo. *See Marton v. Town of Ogunquit*, 2000 ME 166, ¶ 6, 759 A.2d 704, 706. The ordinance is interpreted by examining the plain meaning of the language. *Id.* The

Portland, Me., Code § 14–473(c)(3)(a)(1), (4) (Mar. 24, 2004).

"terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Gerald v. Town of York*, 589 A.2d 1272, 1274 (Me.1991).

[¶ 15] Contrary to the Board, we conclude that "general condition" means present conditions, i.e., those existing at the time of the variance application. We adopt this approach in light of the equitable nature of variances. Variances are, in essence, "escape hatches." 3 ANDERSON'S AMERICAN LAW OF ZONING § 20.02 (Kenneth Young ed., 4th ed.1996). They are "designed to correct maladjustments and inequities in the operation of general regulations." *Id.* To deny a variance based on an original conditions benchmark—despite the fact that the neighborhood has evolved quite differently—would work an injustice because it would divorce variance decisions from a community's contemporary planning objectives. Accordingly, we construe general condition of the neighborhood to require proof of the neighborhood's *present* general condition.

[¶ 16] Our conclusion that the Board erred as a matter of law in interpreting general condition of the neighborhood to mean original conditions of the neighborhood does not end our analysis. O'Toole had the burden to prove that she met the ordinance's criteria for a variance. *See Sibley v. Town of Wells*, 462 A.2d 27, 30 (Me.1983). The Board's decision must still be affirmed unless the evidence compels a finding that O'Toole's need for a variance is due to the unique circumstances of her property. *See Perrin v. Town of Kittery*, 591 A.2d 861, 863 (Me.1991).

2. Unique Circumstances of the Property

[¶ 17] O'Toole's written variance application addressed the uniqueness requirement by stating that the property consists of two contiguous lots which, when aggregated, are sixty feet wide in a zone that requires a minimum width of sixty-five feet. The application provided no other information suggesting that the property was burdened by unique circumstances.

[¶ 18] Before the Board, the evidence regarding the uniqueness of O'Toole's lots was in equipoise. O'Toole, several neighbors, and Board members made general statements suggesting that most of the individual lots in the surrounding neighborhood have been aggregated to create lots that satisfy the sixty-five-foot width requirement. But there were also various statements suggesting that there are other lots in the neighborhood that share the same dimensional shortcomings as O'Toole's lots. For example, O'Toole stated that "these two lots—are one of a handful of lots that don't meet the minimum lot width requirements, even when combined," and that "[t]here are some [lots] left, which are vacant, (inaudible) they can't meet the 65 foot minimum lot width requirement." Significantly, the documentary information provided by O'Toole to the Board identified the configuration of only about half of the lots in the neighborhood. Considered in its entirety, it is not possible to determine from the information provided in support of O'Toole's application whether the undersized width of O'Toole's lots constitutes a unique circumstance relative to the general condition of the neighborhood as a whole. *See Greenberg v. DiBiase*, 637 A.2d 1177, 1179 (Me.1994) (affirming a board's finding that the need for a variance was due to the unique circumstances of the lot in comparison with the other lots in the area).

[¶ 19] The mere existence of a substandard-sized lot in a general subdivision is insufficient to support a finding that a

hardship is unique to the lot in question. *Waltman v. Town of Yarmouth,* 592 A.2d 1079, 1080 (Me.1991). In *Waltman,* we explained that if "the difficulty is one imposed by the zoning ordinance on the neighborhood generally, relief must come by way of legislative action." *Id.* Hence, O'Toole's lots are not unique simply because they do not meet the minimum lot width requirement; she had to adduce evidence that would prove her situation was, in fact, unique. This she failed to do.

B. Whether the Board's Decision Was Arbitrary and/or Impartial

[¶ 20] O'Toole contends that the Board's decision was arbitrary and that the proceeding was "poisoned" by the advice provided by the Board's attorney. The common basis of both arguments is that the Board and its attorney sought to avoid setting a precedent that would inure to the benefit of a developer who is a frequent opponent of the Board. Because the record reflects that the Board's deliberations at the conclusion of the hearing and its written findings focused exclusively on the variance criteria set forth in the ordinance, we are not persuaded by O'Toole's contention.

[¶ 21] To advance her contention that the proceeding was "poisoned" by the advice provided by the Board's attorney, O'Toole asserts that the Board's attorney prejudiced the Board against her by repeatedly insinuating that a decision in O'Toole's favor would set a precedent for a flood of variance requests. O'Toole alleges that the Board's attorney's actions were motivated, in part, by a desire to avoid setting a precedent that would indirectly benefit a particular developer who had frequently opposed the Board in litigation.

[¶ 22] Two of the Board's members and its attorney did refer to the prospect that a decision favorable to

O'Toole might encourage others to seek variances. It is not unexpected that members of a volunteer municipal board might consider whether their action on an individual application may encourage or discourage others in the community to seek variances. A board's historic interpretation and application of a town's ordinances may provide guidance for other applicants. While this consideration is not inappropriate, it cannot substitute for a decision based exclusively on the requirements of the ordinance. Accordingly, we will not vacate a board's decision on this basis unless it is shown that the consideration was a factor in the board's decision.

[¶ 23] Viewing the record of this proceeding in its entirety, we conclude that, although Board members expressed concern about the precedential effect of their decision, the Board's deliberations at the conclusion of the hearing and its written findings focused exclusively on the variance criteria set forth in the ordinance.

[¶ 24] O'Toole also asserts that the comments of one Board member suggest reliance on an arbitrary rule of thumb to deny the variance (i.e., that the variance should be denied because it sought to reduce the frontage requirement by more than five percent), and that this demonstrates that the Board's decision was arbitrary. The minutes of the Board's deliberations reflect, though, that the same Board member subsequently expressed that he would consider the variance criteria specified in the ordinance, and it is not clear from the record whether he employed an arbitrary standard in arriving at his vote. When the individual Board member's comments are considered in their entirety, and in conjunction with the comments of the other Board members and the Board's written findings, we are not persuaded that the Board acted arbitrarily or capriciously, *see White v. Town of Hollis,* 589 A.2d 46, 48 (Me.1991), or "acted other than

appropriately," *Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 2 n. 3, 836 A.2d 1285, 1286.[3]

[¶ 25] We do not separately address O'Toole's remaining arguments, which we find to be without merit.

The entry is:

The judgment of the Superior Court is vacated, and the action is remanded to the Superior Court for entry of a judgment affirming the decision of the City of Portland Zoning Board of Appeals.

---

**3.** The City also contends that the Board properly decided that O'Toole failed to prove that no other feasible alternative was available to her except a variance. 30–A M.R.S.A. § 4353(4–C)(D) (2003); Portland, Me., Code § 14–473(c)(3)(a)(4). Our conclusion that O'Toole failed to meet her burden of proof with respect to the unique circumstances criterion obviates our need to consider whether she proved that there were no feasible alternatives available to her. *See Curtis v. Main*, 482 A.2d 1253, 1258 n. 6 (Me.1984).