STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-06-026

CHARLES L. NARDI,

Plaintiff

v.

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

SEP 07 2007

TOWN OF KENNBUNKPORT,
MARY KAE LAROSE and
MARC MONTAGNER,

Defendants

This matter comes before the Court on Charles and Marnie Nardi's 80B appeal of administrative action taken by the Town of Kennebunkport. Following hearing, the appeal is Denied.

## BACKGROUND

Plaintiffs Charles and Marnie Nardi ("the Nardis") filed this 80B appeal in their capacities as Trustees of the First Amended and Restated Revocable Trust of Charles L. Nardi and the First Amended and Restated Revocable Trust of Marnie J. Nardi. Mr. Nardi owns residential property at Skipper Joe's Point in Kennebunkport, Maine, on which he maintains a summer home. Mary Kae LaRose ("LaRose") and Marc Montagner ("Montagner") live in Washington, D.C. and also own 4.37 acres of residential property at Skipper Joe's Point, which abuts Mr. Nardi's property. A single-family residence established by the prior owner occupies the southwestern part of the LaRose and Montagner property.

This Court adjudicated a similar, earlier dispute involving the same property in 2001, when it entered an order that no new residence could be built on the property

now owned by LaRose and Montagner due to its location in several protected areas, including the Critical Edge Overlay Zone, Goose Rocks Beach Zone, Shoreland Overlay Zone, and Resource Protection Zone. *Nardi v. Town of Kennebunkport*, ALFSC-AP-2000-001 (Me. Super. Ct., Yor. Cty., Feb. 12, 2001) (Brennan, J.). The Kennebunkport land use ordinance states that single-family homes are not permitted uses within the Resource Protection Zone and Critical Edge; accordingly, this Court overturned the Board's decision to grant a building permit in that area.[1] *Id.* The Court's main rationale was that the planning board did not have the authority to resolve a discrepancy between the physical location of the home and the boundary depiction on the zoning map by altering the boundary.[2] Neither side appealed the 2001 order preventing the new construction.

In February 2006, LaRose and Montagner sought site plan approval from the planning board ("the Board") to construct a concrete foundation to replace the current cinderblock foundation, and then move the existing residence onto the new foundation, which would be at a different physical location on their property. On May 3, 2006, the Board held a public hearing to debate the matter, and in findings and conclusions dated May 17, it approved the site plan review application, finding that it complied with the requisite performance standards and would actually increase the structure's conformity with the ordinance. The Nardis then appealed that decision to this Court, contending that it was arbitrary and capricious, unsupported by evidence, and an error of law. Defendant Town of Kennebunkport ("the Town") and LaRose and Montagner contend that the Board is entitled to deference and properly approved their application.

---

[1]     Existing homes in those areas are grandfathered as permitted, non-conforming uses.

[2]     In 2002, the Town altered § 3.2.C of the ordinance to vest the CEO with authority to interpret boundaries where a discrepancy exists. The section also states that written descriptions prevail over maps where there is a discrepancy, but it does not enable the CEO to redraw boundaries.

## DISCUSSION

1.    <u>Standard of Review</u>.

Review of board findings is "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *O'Toole v. City of Portland*, 2004 ME 130, ¶ 8, 865 A.2d 555, 558. This Court is "limited to determining whether the record contains evidence to justify the Board's determination." *Lewis v. Maine Coast Artists*, 2001 ME 75, ¶ 14, 770 A.2d 644, 650.

2.    <u>Is This Project an Impermissible Expansion of a Non-Conforming Use ?</u>

The Nardis frame the central debate in this case as whether the Board properly analyzed the residence on the LaRose and Montagner property solely as a non-conforming structure rather than as a non-conforming structure *and* a non-conforming use. They argue that the Board failed to consider that the property is subject to the stringent standards applicable to non-conforming uses because any single-family home in a protected area such as the Critical Edge is automatically a non-conforming use. The Town recognizes that the single-family home is a non-conforming use, but contends that the Board correctly determined that changing the placement of the house would not violate the ordinances applicable to non-conforming uses. Also, the Town points out that the use of the residence will not change – it will be a dwelling regardless of where on the property it is placed. Because the Board did not believe the proposal would result in a change of use, it focused on the home as a non-conforming structure.

The Town's Land Use Ordinance ("LUO") states that "[a] non-conforming structure or use shall not be changed, extended or enlarged in any manner except as provided in this subsection." LUO Art. 8, §8.2.A. An expansion of use for such a structure constitutes, in part, adding "the use of more floor area or ground area devoted

3

to a particular use." LUO Art. 2, § 2.2. Expanded uses are permitted even within the Critical Edge – LUO Art. 5, § 5.5.B.2 specifically provides that expansion or enlargement of pre-existing dwellings is permissible in that area as long as certain criteria are satisfied. The LUO also notes that replacing a foundation or constructing one does not constitute an expansion of use. Art. 8, § 8.2.B.2.

The Law Court upheld a board's determination that a proposed use would improperly expand a nonconforming use in *Two Lights Lobster Shack v. Town of Cape Elizabeth*, 1998 ME 153, ¶ 1, 712 A.2d 1061, 1062. There, the plaintiff sought to build a foundation under the restaurant, resulting in the addition of a basement. *Id.* ¶ 3, 712 A.2d at 1062. The board had properly determined that the restaurant was already a nonconforming use in the zones in which it was located. *Id.* ¶ 2, 712 A.2d at 1062. Thus, the Court upheld the board's determination that, while building a foundation was permissible under the town's ordinance, altering the building's use to include a basement was an impermissible expansion of what was already a nonconforming use. *Id.* ¶ 4, 712 A.2d at 1062.

The Nardis argue that an analogous situation is presented here, as Montagner and LaRose proposed a permissible foundation addition but an impermissible expansion of a non-conforming use. They contend that, while the dwelling may stay where it is, § 8.2.B.2 of the LUO does not allow it to be moved or changed in any way, which would include moving it to a different area of the property.[3] In addition, they contend that the area of the property to which the house would be moved is the same

---

[3] The Nardis rely on a recent Law Court case, which addressed change of use. *See Conway Lake Resorts, Inc. v. Quisisana Resort*, 2006 ME 77, ¶ 4, 899 A.2d 815, 817. That case involved a jurisdictional issue, but to the extent the facts are comparable, the plaintiff was attempting to change part of one non-conforming use, a restaurant, into another non-conforming use, hotel space. *Id.* ¶ 2, 899 A.2d at 816. Here, Montagner and LaRose do not propose to replace one non-conforming use with another; they seek to relocate the non-conforming use and continue it in the same manner.

4

area at issue in 2001, when this Court held that no new construction could take place there. Montagner and LaRose distinguish their case because, unlike the project in the 2001 case, their proposal would not involve completely new construction.[4] They also contend that transferring the home, although it is both a non-conforming structure and a non-conforming use, is not an expansion, but merely a continuation of the same non-conforming use, which is not barred under § 8.2.B.2. The Board agreed, stating that in its view, the section seems to contemplate relocating a structure. It also determined that moving the structure would remove it from the Resource Protection Zone. As the Board's primary function in this matter was to determine whether the relocation was an improper use expansion, and the fact that the property is both a non-conforming use and structure is not debated, this Court must review the Board's factual conclusions with deference.

At the May 3, 2006 hearing, the Board heard substantial testimony and reviewed the ordinances and evidence carefully.[5] Board members reasoned that if the structure were allowed, the use would necessarily be permitted. They also discussed that this would not entail a changed use, which could be prohibited; instead, it would merely be a change of location of an existing use. Counsel for Nardi argued that prolonging the non-conforming use by adding a new foundation contradicts the goal of gradually eliminating non-conformity, although she conceded that the ordinance allows this. But, the Board analyzed the project primarily as a non-conforming structure because it

---

[4] Additionally, the new construction in the 2001 case would have resulted in two houses on the same parcel because the existing house would have been undisturbed.

[5] In the parties' briefs, there is some disagreement as to whether the entire Montagner/ LaRose parcel is fully in the RP zone, or whether it is only partially in that zone, which would affect conformity of the structure. The Nardis contend that the zoning map depicts the property as within the RP zone in its entirety. Montagner and LaRose contend that it is only partially RP property in light of a 1999 FEMA map revision, and that moving the residence would completely remove the house from the RP zone. The Court need not definitively address this issue because the non-conforming use is permitted, regardless of whether the structure is partially or wholly in the RP area.

5

determined that the use would not change, which is a factual determination to which this Court must defer in the absence of substantial evidence to the contrary. A review of the record does not reveal evidence that would require the Court to overturn the Board's finding that moving the house onto a new foundation on a different area of the property would not constitute an improper expansion of the non-conforming use. The Board's findings that the relocation and the new foundation are permitted under the Town's ordinances is affirmed.

3.    Did the Board Properly Determine That The Project Satisfied All Review Standards?

This Court deferentially reviews a board's factual findings to determine whether the evidence before the board justified the decision. *Lewis v. Maine Coast Artists*, 2001 ME 75, ¶ 14, 770 A.2d 644, 650. The Court may not overturn a board's decision "because the record is inconsistent" or it is possible to reach a "different conclusion" than the board did. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995).

Here, the Board reviewed the criteria in LUO § 10.10.A and found that the Montagner/LaRose plan met all sixteen, as well as additional criteria applicable in the Shoreland Zone, the Critical Edge, and the Resource Protection Zone. The Nardis contend that the board failed to factor in that the dwelling is a prohibited use. As stated above, however, the dwelling is not a prohibited use. Also, the Nardis argue that the Board mistakenly determined that the relocation would not have a substantial affect on their view of the water. Montagner and LaRose contend that the Board properly made that determination because the Nardis' view is expansive and the Nardis do not have a visual easement over that area. Because the record contains sufficient evidence to support the Board's finding that the relocation met the LUO criteria and would not substantially harm the Nardis' view, the decision is affirmed.

6

# CONCLUSION

The appeal is Denied and the Board's decision is Affirmed.

Dated:     May *16*, 2007

G. Arthur Brennan
Justice/Superior Court

PLAINTIFF:
JOHN C. BANNON, ESQ.
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME   04104-5085

DEFENDANT: TOWN OF KENNEBUNKPORT
BRIAN J. WILLING, ESQ.
DRUMMOND WOODSUM & MACMAHON
PO BOX 9781
PORTLAND ME   04104-5081

DEFENDANTS: MARYKAE LAROSE & MARC MONTAGNER
RALPH W. AUSTIN, ESQ.
WOODMAN EDMANDS DANYLIK & AUSTIN
PO BOX 468
BIDDEFORD ME   04005