2008 ME 15

**Normand J. MARTIN et al.**

v.

**CITY OF LEWISTON et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 1, 2007.

Decided: Jan. 29, 2008.

Roy T. Pierce., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant.

David C. Pearson, Eaton Peabody, Brunswick, for appellee.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] Normand J. Martin and Nathan J. Martin appeal from a judgment in the Superior Court (Androscoggin County, *Delahanty, J.*) affirming a decision by the City of Lewiston Board of Appeals vacating the issuance of a building permit to the Martins. This appeal centers on the question of whether an unnumbered parcel in an approved subdivision plan was intended by the subdivision's creators to be a "paper street" dedicated for public use. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In 1968, the City of Lewiston Planning Board approved a development plan submitted by Philip and Rita Asselyn. The plan consisted of thirty-three numbered lots, four named streets, and three unnumbered, unidentified parcels of land. The version of 30 M.R.S.A. § 4956 then in effect stated that approval of a subdivision was to be based on its compliance with municipal ordinances.[1] 30 M.R.S.A. § 4956 (1964), *as amended by* P.L. 1967, ch. 401, § 3. In 1972, the Planning Board reviewed the plan again and found it to be in accordance with the recently amended version of section 4956. 30 M.R.S.A. § 4956 (1964), *as amended by* P.L. 1971, ch. 454. This version of section 4956 again required a planning board to determine if a subdivision plan conformed with all relevant municipal ordinances before approving the plan.[2]

[¶ 3] In August 2003, the Martins—the Asselyns' successors-in-title—applied for a building permit to construct a 300–foot driveway over one of the unnumbered parcels of land, which separates Lots 6 and 7 of the Asselyn subdivision plan.

[¶ 4] Richard and Diana Cloutier, who own Lot 6, and Anthony and Lisa Fontaine, who own Lot 7, opposed the application, contending that the parcel is a "paper street" and that they are therefore the rightful owners of the parcel.[3] By operation of statute, ownership of proposed, unaccepted ways laid out in a subdivision plan prior to September 29, 1987, is conveyed to the abutting landowners unless the grantor expressly reserved title by a specific reference to 33 M.R.S. § 469–A(1) (2007).

[¶ 5] Although the Asselyn subdivision plan contains two additional unnumbered parcels similar to this one, neither is at issue in this case. These two parcels nev-

---

**1.** The statute provided, in pertinent part, that "Approval of a subdivision shall be based on its compliance with municipal ordinances and its general reasonableness." 30 M.R.S.A. § 4956(1)(C) (1964), *as amended by* P.L. 1967, ch. 401, § 3.

**2.** As amended, the statute provided, in pertinent part, that:

   **3. Guidelines.** When promulgating any subdivision regulations and when reviewing any subdivision for approval, the planning board, agency or office, or the municipal officers, shall consider the following criteria and before granting approval shall determine that the proposed subdivision:
   . . . .

   **J.** Is in conformance with a duly adopted subdivision regulation or ordinance, comprehensive plan, development plan, or land use plan, if any. . . .

30 M.R.S.A. § 4956 (1964), *as amended by* P.L. 1971, ch. 454.

**3.** A paper street is "a dedicated, but unconstructed and unaccepted street. . . ." *O'Toole v. City of Portland*, 2004 ME 130, ¶ 2, 865 A.2d 555, 557. The Cloutiers and Fontaines accordingly refer to the parcel as the "Elaine Street Extension." The Martins refer to the disputed parcel as an unnumbered lot. We adopt the City of Lewiston's description of the land as the unnumbered parcel.

ertheless remain relevant due to the aid they provide in determining the intended purpose of the unnumbered parcels in the plan. The first parcel separates Lots 11 and 16 while the second lies between Lots 21 and 27.

[¶ 6] After the parties outlined their respective legal positions, the City sought guidance from its attorney. The City's attorney concluded that the Asselyns had reserved the unnumbered parcel for themselves, rather than dedicating it to a public use. The City's building inspector approved the building permit and the individual defendants appealed to the Lewiston Board of Appeals. The Board voted 4–1 to vacate the issuance of the building permit, finding that "the Asselyns did dedicate the unnumbered lot to the City of Lewiston for use as a public street."

[¶ 7] Following the decision of the Board, the Martins filed an appeal with the Superior Court pursuant to M.R. Civ. P. 80B and also filed independent claims against the Cloutiers and Fontaines for: (1) a declaratory judgment as to the parties' legal rights to the parcel, (2) common law trespass, and (3) nuisance. The Cloutiers and Fontaines counterclaimed for: (1) declaratory judgments that the Martins have no interest in the disputed parcel and lack a prescriptive easement; (2) adverse possession; (3) prescriptive easement; (4) easement by estoppel; (5) interference with easement; and (6) common law trespass. They also filed a third-party complaint against the Field Trust, the Martins' predecessor-in-title, asserting similar claims. The Superior Court stayed the independent claims pending a decision on the Rule 80B appeal and the Cloutiers and Fontaines' claims for a declaratory judgment.

[¶ 8] The Superior Court affirmed the Board's ruling that the Asselyns intended to dedicate the parcel as a public street, concluding that the Martins failed to show that the Board's factual finding "was unsupported by substantial evidence on the record." The court also issued a declaratory judgment that the Martins and their predecessor-in-title have no interest in the disputed parcel and lack a prescriptive easement, and it dismissed the remaining claims as moot. This appeal followed.

## II. STANDARD OF REVIEW

[¶ 9] On an appeal from Superior Court review of an administrative decision, we "directly review an agency's decision for an abuse of discretion, error of law, or findings not supported by the evidence." *York Ins. of Me., Inc. v. Superintendent of Ins.*, 2004 ME 45, ¶ 13, 845 A.2d 1155, 1159. The party seeking to vacate an agency decision bears the burden of persuasion. *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 14, 843 A.2d 18, 22. Here, the "agency" at issue is the Board which acted in an adjudicatory capacity, not as an appellate body.

[¶ 10] The determination of intent to dedicate a parcel of land for a public purpose is a question of fact, *Vachon v. Inhabitants of Town of Lisbon*, 295 A.2d 255, 259–60 (Me.1972) (quoting *Baker v. Petrin*, 148 Me. 473, 479–80, 95 A.2d 806, 810 (1953)). The intent to dedicate must be clear and unequivocal. *See Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1129 (Me.1984).

[¶ 11] We will not disturb a finding of fact by a trial court or an agency if "a reasonable mind might accept the relevant evidence as adequate to support the [fact-finder's] conclusion." *Town of Southwest Harbor v. Harwood*, 2000 ME 213, ¶ 6, 763 A.2d 115, 117 (quotation marks omitted). In other words, once a party has produced sufficient evidence to satisfy her burden of production as to a

claim or defense, we do not substitute our judgment for that of the fact-finder below even though "the record is inconsistent or a different conclusion could be drawn from it." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863, 866 (quotation marks omitted). To succeed in this appeal, the Martins must demonstrate that the Board clearly erred in being persuaded on the basis of the evidence in the record "that the required factual findings were proved to be highly probable." *Shrader–Miller v. Miller*, 2004 ME 117, ¶ 20, 855 A.2d 1139, 1145 (quotation marks omitted); *see also Waxler v. Waxler*, 1997 ME 190, ¶ 15, 699 A.2d 1161, 1165.[4]

### III. DISCUSSION

[¶ 12] To prove intent to dedicate a parcel of land for a public purpose, evidence of the grantor's intentions must be clear and unequivocal. *See Augusta Country Club*, 477 A.2d at 1129. The party claiming dedication must "show by acts or declarations of the owner of the land, or by some other competent testimony, a clear and unequivocal intention to dedicate to public use. Everything depends upon the intention of the party whose dedication is claimed...." *Littlefield v. Hubbard*, 124 Me. 299, 303, 128 A. 285, 287 (Me.1925) (citation omitted). The Asselyns' intent at the time of the claimed dedication is therefore determinative of the issue.

[¶ 13] The Martins assert that the Board clearly erred in finding it highly probable that the Asselyns intended to dedicate the unnumbered parcel separating Lots 6 and 7 to the public. They assert that no intent can be discerned from the subdivision plan or the zoning ordinance then in effect. They also contend that the Board applied the wrong legal standard because its members made statements prior to the vote indicating that no clear intent could be found. We disagree with these contentions.

[¶ 14] Turning to the last contention first, we cannot say that the Board applied the wrong legal standard based on the record before us. Granted, during their deliberations, members of the Board stated at times that there was no evidence of a clear intent to dedicate the disputed parcel for a public purpose. We do not, however, review individual board member comments without regard for the record as a whole, but instead analyze a board's deliberations in context, taking into consideration both the comments of other board members and the board's written findings. *See O'Toole v. City of Portland*, 2004 ME 130, ¶ 24, 865 A.2d 555, 561–62. The minutes of the deliberations reflect that, by the end of the hearing, a majority of the Board ultimately concluded that the Asselyns' intent was clear.[5] Furthermore, the

---

4. We note, as the Martins assert, that the Superior Court incorrectly assigned the Martins the burden to demonstrate that the evidence before the Board compelled a contrary result—a burden of proof reserved for appellants who bore the burden below. *See Schwartz v. Unemployment Ins. Comm'n.*, 2006 ME 41, ¶ 8, 895 A.2d 965, 970. The Martins, though, did not bear the burden of proof before the Board.

5. Specifically, near the end of its hearing, the Board members stated:

> MR. POWERS: Probably not going to [Inaudible] but it's not clear as to what the intent of the Asselyns were ...
> MR. BRUDER: Well, it's not clear, no. That's definite. I
> ...
> MR. GIRARDIN: I think the drawing of the map is pretty clear myself.... [I]f this was an unnumbered lot, ... why didn't he put it in the middle over here instead of going right up this roadway going through here, going right straight through here. [Inaudible] Giving all these people the frontage they needed.

record also establishes that the City's attorney advised the Board of the correct legal standard prior to the Board's vote.

[¶ 15] Similarly, the Board's finding of a clear and unequivocal intention to dedicate the unnumbered parcel for public use is not only defensible, but is supported by the subdivision plan itself because the plan establishes that the Asselyns designed the three unidentified parcels to be streets. First, every lot on the inside corner of an intersection in the subdivision plan has radiused corners. Lot 7, which would sit on the inside corner of an intersection if the unnumbered parcel at issue is considered a street, has radiused corners. Second, the three unnumbered parcels are the same width as the identified roads. Third, the three unnumbered parcels plainly appear to be extensions of identified roads. Fourth, although not cited by any party, the "Notes" on the subdivision plan clearly state that all streets are fifty feet wide and all corners are radius ten feet. The three unnumbered parcels conform to these dimensions.

[¶ 16] In addition, although these parcels lack centerlines and are segregated on the plan from the other streets by solid lines, the Asselyns had a reason for marking these parcels on the plan in a different manner than the identified streets. The Asselyns were required to build only the identified roads in order to provide access to and, therefore, sell the numbered lots in the subdivision plan. The remaining roads—the three unnumbered parcels— need not have been constructed and were appropriately marked in a different manner on the plan.

[¶ 17] Finally, and perhaps most importantly, Lots 6, 11, and 27 only possessed the minimum street frontage required under the City's then-in-effect zoning ordinance if the three unnumbered parcels were considered streets for the purpose of calculating frontage.[6] The City's code enforcement officer testified that prior to 1987, a developer could use the frontage provided by a paper street for the purpose of meeting the frontage requirement. Although the ordinance is not relevant to the extent that it addresses the lawfulness of the subdivision itself, the ordinance is significant evidence of the Asselyns' intent regarding the purpose of the unnumbered parcels as shown in the plan. That is, the unnumbered parcels were intended to function as public roads so that the entire subdivision would comply with the City's ordinance and, in turn, would comply with 30 M.R.S.A. § 4956 (1964), *as amended by* P.L. 1967, ch. 401 § 3.

[¶ 18] Viewing the record as a whole, the Board did not clearly err in finding it highly probable that the Asselyns intended to dedicate the unnumbered parcel to the public.

The entry is:

Judgment affirmed.

---

There's just a lot of different things that would indicate that that was the intent.
MR. BRUDER: I think you make a good point there.

. . .

MR. FORTIER: [T]hat's the one that answers it. That determines intent. We've determined the intent with that . . . one.

MS. MAKAS: In my mind there was that intent.

6. In fact, if one concludes that the unnumbered parcels are not paper streets. Lots 11 and 27 would have virtually no street frontage, making them not only illegal, but also only accessible by foot.