STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-56
MMM -KEN - 2/8/2012

INHABITANTS OF THE TOWN OF
MILFORD and CITY OF OLD TOWN,
   Petitioner

v.

ORDER ON
RULE 80C APPEAL

PPL MAINE, LLC,
   Respondent

Before the Court is the town of Milford and city of Old Town's appeal brought

pursuant to M.R. Civ. P. 80C from a September 30, 2010 Decision of the State Board of

Property Tax Review granting PPL Maine's abatement appeals for the April 1, 2007 tax

assessment date. Oral argument on this appeal was conducted on November 17, 2011.


FACTS

PPL Maine, LLC (PPL) owns a large hydroelectric dam on the Penobscot River

between the towns of Milford and Old Town ("the Large dam") and a smaller dam that

runs across the Stillwater River located in Old Town ("the Small dam") (together "the

Property"). The Property was assessed as one economic entity for purposes of taxation.

Milford and Old Town ("the Towns") have informally agreed to apportion the Property

1

75% to Milford and 25% to Old Town, due to the fact the physical power plant is located in Milford. (May Tr. 8.)

The tax year in question is 2007-2008, and the corresponding valuation date was April 1, 2007. For that date, Milford assessed the Property as a whole at **$17,737,833**. Its 75% share would have been $13,303,375, but Milford applied an 80% "assessment ratio" to the property for that year.[1] (May Tr. 7.) Thus, Milford actually assessed PPL $10,642,700 for the taxable year. For the same date, Old Town assessed the Property as a whole at **$20,480,000**. Its 25% share was $5,120,000, which amount was actually assessed because it applied a 100% assessment ratio for that year. Additionally, Old Town assessed the Small dam separately, at $394,200. (May Tr. 7.)

In February 2008, PPL filed separate abatement requests with Milford and Old Town, both of which were denied. PPL then filed separate petitions for assessment review with the State Board of Property Tax Review ("the Board"). (R. Folder #2.)[2] The Board held a three-day hearing on May 11, June 15, and July 27, 2009.

The Board considered the following evidence during deliberations on September 25, 2009:

I.    PPL's impeachment of the Towns' original assessments

The basis for Milford's original assessment of $17,737,833 for the Property overall is unclear. At the hearing, Richard Sands testified in his capacity as "assessor's

---

[1] "Assessment ratio" refers to the ratio of a property's assessed value to its fair market value. 2-23 *Bender's State Taxation: Principles and Practice* § 23.01[2][b] (2011). Maine law places limits on assessment ratios. 36 M.R.S.A. § 327.

[2] Aside from the transcript, the Record is divided into two folders with no page numbers or other organization within.

2

agent" for Milford. Mr. Sands did not take on that role until summer 2008, after taxes had been assessed for the April 1, 2007 valuation date. (May Tr. 54.) Based on his testimony, Mr. Sands had no significant understanding as to how the April 1, 2007 valuation was determined. (May Tr. 55, 59, 64). He could not point to any documentation in Milford's possession to explain the valuation, nor could he confirm whether the town had considered the "income approach" in arriving at the final assessment. (May Tr. 59, 61, 64, 67.) Mr. Sands testified that his predecessor, Mark Gibson, informed him that he "carried forward a number that was on the plant when he arrived," and continued to use it for the approximately three years he held the post. Mr. Gibson did not know where the figure came from. (May Tr. 68.)

The basis for Old Town's assessment of $20,480,000 for the Property overall is more clear, but does raise potential questions of reliability. At the hearing, William Mayo testified in his capacity as Old Town's tax assessor, a post he held on the April 1, 2007 assessment date. (May Tr. 70.) Mr. Mayo testified that Old Town's assessment of the Property was the product of a city-wide revaluation for the 2007-2008 tax year conducted by Tyler Technologies. (May Tr. 70-71.) Gymp Grube, a commercial appraiser at Tyler Technologies, produced an appraisal report recommending the $20,480,000 assessment value for the overall Property. (May Tr. 88; R. Folder #2.) The Small dam was assessed separately under a "replacement cost less depreciation" analysis, causing some confusion over whether it was double-counted. (May Tr. 76-78.)

Mr. Grube himself did not testify, and his half-page, hand-written appraisal report of the Property was the only evidence of the valuation process. (May Tr. 125; R. Folder #2.) Mr. Mayo testified that nobody performed an income analysis in the course of the

3

appraisal. (May Tr. 103.) Mr. Grube based his assessment largely on the price per kilowatt generated from the sales of two different dams, one in Millinocket in 2002 and one in Rumford in 2006. As the appraisal report reflects, the Rumford facility sold for $3,659 per kilowatt and the Millinocket facility sold for $1,327 per kilowatt. (R. Folder $2.) Mr. Grube averaged the two values, then adjusted that figure upward with the denotation "closer to more recent sale + high efficiency." (May Tr. 82-83.) However, there was no explanation made as to how differences in efficiencies, expenses, and other attributes might affect a valid sales-to-sales comparison. (May Tr. 85, 110.) The appraisal report also adjusted upward an additional 5% due to "expansion capacity," although there was no analysis of the practicality or effects of expansion. (May Tr. 83.)

II.     PPL's evidence of alternative value

PPL called George Lagassa (Mr. Lagassa) as an expert witness, who had prepared an appraisal report. (May Tr. 11-12.) The Towns called Stephen Traub (Mr. Traub) as an expert witness who had prepared a review report of Mr. Lagassa's appraisal report. (May Tr. 12.) Through Mr. Lagassa, PPL asserted that the property as a whole should be valued at **$10,974,000**, with $2,524,020 (23%) allotted to Old Town and $8,449,980 (77%) allotted to Milford. (June Tr. 121.) Mr. Traub, in a review capacity, testified that the property overall should be valued at **$18,542,000**, with $4,264,660 (23%) allotted to Old Town and $14,277,340 (77%) allotted to Milford. (June Tr. 245.) Mr. Lagassa's expert opinion was largely premised on the theory that electricity costs would decrease in future years. (June Tr. 137.) His theory was based on the United States Energy Information Administration's "Annual Energy Outlook." (June Tr. 198.) Mr. Traub, on the other hand, used the rate of inflation to forecast energy prices. (June Tr. 240.)

The Board considered this evidence during its deliberations of September 25, 2009. The Board's final decision, dated September 30, 2010, found that PPL had successfully impeached the credibility of the Towns' assessments and adopted PPL's assessment of the whole Property at **$10,974,000**. The Towns appealed to Superior Court under M.R. Civ. P. 80C.

## STANDARD OF REVIEW

In this case, there are two standards of review to consider: First, this Court's standard in relation to the Board's decision, and, second, the Board's standard in relation to the Towns' original assessment figures.

This Court reviews the Board's decision directly for "abuse of discretion, error of law, or findings not supported by the evidence." *Rangeley Crossroads Coal. v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223 (citations omitted).[3] The court is bound to uphold factual findings if there is "any competent evidence in the record to support [them]." *Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263 (citation and quotation omitted). To determine whether substantial

---

[3] Under the statutory iteration of the standard of review, the Superior Court may only reverse or modify the Board's decision if it is:
  (1) In violation of constitutional or statutory provisions;
  (2) In excess of the statutory authority of the agency;
  (3) Made upon unlawful procedure;
  (4) Affected by bias or error of law;
  (5) Unsupported by substantial evidence on the whole record; or
  (6) Arbitrary or capricious or characterized by abuse of discretion.
5 M.R.S.A. § 11007(4)(C). Note that the Court also has broad discretion to "[r]emand the case for further proceedings, findings of fact or conclusions of law or direct the agency to hold such proceedings or take such action as the court deems necessary." *Id.* § 11007(4)(B).

evidence exists to uphold the Board's decision, the court "examine[s] the entire record to determine whether the agency could fairly and reasonably find the facts as it did." *Id.* This holds true even when the record is inconsistent or could support different conclusions, as long as "a reasonable mind might accept the relevant evidence as adequate to support the [administrative] conclusion." *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me. 1992).[4] The Party seeking to overturn an agency decision bears the burden of persuasion. *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 14, 843 A.2d 18 (citation omitted).

In an appeal before the Board, municipal assessment figures are entitled to a presumption of validity. *Northeast Empire P'ship #2 v. Town of Ashland*, 2003 ME 28, ¶ 7, 818 A.2d 1021 (citation omitted). As the taxpayer petitioning for abatement, PPL bore the burden of proving that the Towns' assessment in relation to just value was "manifestly wrong." *Waterville Homes*, 655 A.2d at 367 (quoting *Delta Chemicals Inc. v. Searsport*, 438 A.2d 483, 484 (Me. 1981)). An assessment is "manifestly wrong" if it was the product of (1) substantial overvaluation, (2) unjust discrimination, or (3) fraud, dishonesty, or illegality. *Northeast Empire P'ship #2*, 2003 ME 28, ¶ 7, 818 A.2d 1021 (citation omitted). A showing of overvaluation requires affirmative, credible evidence of just value, not just impeachment of the original assessments. *Id*; *Waterville Homes*, 655 A.2d at 367; *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 13, 769 A.2d 865.

---

[4] The Law Court has said that the "compels a contrary result" standard, urged here by PPL, only applies when the appellant bore the burden at the administrative level. *Martin v. City of Lewiston*, 2008 ME 15, ¶ 11 n. 4, 939 A.2d 110. The Towns (appellant here) did not have the burden in front of the Board, so the Court declines to use that standard.

6

DISCUSSION

The Towns and the Board both treated the taxpayer's burden in front of the Board as requiring two steps: (1) impeachment of the Towns' original assessments, and (2) credible evidence of alternative value. As such, the thrust of the Towns' first issue in its Initial Brief was that "The State Board Committed Reversible Error in Not Applying the Proper Legal Standard in Determining that PPL Had *Impeached the Assessments*." (Br. of Pet. 8) (emphasis added.) Most of the examples cited in the Towns' brief for this position, however, were actually a part of the Board's discussion regarding PPL's offering of evidence of alternative value. The Towns clarify in its Reply Brief that the Board *also* erred with respect to the "burden to present credible evidence of value." (Reply Br. of Pet. 1, 5.) Thus, the Court considers here, more broadly, whether the Board properly applied that burden and not what it treated as the initial burden of impeachment.

The Court notes that, with respect to the first step, there is no question that PPL met its burden to impeach the original assessments and that the Board was satisfied by its effort. The Board's discussion of the Town's original assessments was confined to the beginning pages of the deliberations record and quickly resolved the issue in favor of PPL.[5]

---

[5] Specifically, the Board found the following evidence most compelling: First, the apparent lack of any sound basis for the Milford assessment, except "a figure that was arrived at several years ago and carried forward." (Sept. Tr. 5-6.) Second, the fact that Old Town may have double counted the Small dam in its assessment. (Sept. Tr. 3-4, 7.) Third, the inadequacy of the sales-comparison approach used in Old Town's assessment, and the appraisal's failure to consider other valuation methods required by law. (Sept. Tr. 8-9.) The Board properly applied the burden and the evidence relied upon easily satisfies the "substantial evidence" standard on appeal.

With respect to PPL's burden to provide credible, affirmative evidence of value, the Towns argue that the Board improperly presumed Mr. Lagassa's appraisal on behalf of PPL to be credible during the Board's September 2009 deliberations. In support of its position, the Towns pinpoint a comprehensive list of Board member comments from the deliberations that they believe improperly shift the burden to the Towns' expert, Mr. Traub.[6]

Although the Court is not always privy to an agency's deliberations, deliberative content inevitably becomes part of the administrative record when a transcript thereof is made available. The Law Court has addressed the question of how to treat the substance of agency deliberations in assessing the validity of a final agency decision under Rule 80C. Rather than consider Board member comments in isolation, the court must "analyze a board's deliberations in context, taking into consideration both the comments of other board members and the board's written findings." *Martin v. City of Lewiston*, 2008 ME 15, ¶ 14, 939 A.2d 110 (citing *O'Toole v. City of Portland*, 2004 ME 130, ¶ 24, 865 A.2d 555).[7]

---

[6] For instance: "There was not enough convincing in [Mr. Traub's report] to make me conclude that this opinion [Mr. Lagassa's] was wrong and this was right." (Sept. Tr. 33.) "I don't know if [Mr. Lagassa's opinion] is correct or not. What I am saying is I see nothing in here to convince me that it is not correct." (Sept. Tr. 34.)

[7] In that case, the Board voted to recognize the existence of a public way, which rested on a finding of grantor intent. *Martin*, 2008 ME 15, ¶ 6, 939 A.2d 110. The Petitioner on appeal argued that the Board applied the wrong legal standard in finding intent, pointing to certain individual board member comments during deliberations that seemingly questioned the grantor's intent. *Id.* ¶ 13. Adopting the standard iterated above, however, the Court opted to consider the Board's collective thought process as a whole, finding that "by the end of the hearing, a majority of the Board ultimately concluded that the [grantor's] intent was clear." *Id.* ¶ 14. The Court also found it significant that counsel for the Board clearly instructed them on the correct legal standard for intent. *Id.* In that

After carefully reviewing the hearing and deliberations transcripts, the Court concludes that the Board properly applied PPL's legal burden to present credible evidence of value. The Court recognizes that the deliberations are largely spent discussing the Board's concern about the credibility of Mr. Traub's opinion and his purported failure to discredit Mr. Lagassa's opinion. However, the Court finds that these comments serve the function of assessing the witnesses' *credibility*, not of *shifting the burden*.

The line between credibility and burden-shifting is very fine in this case, where the burden is only satisfied when PPL presents enough credible evidence. The two concepts are necessarily intertwined. Nevertheless, the Board as fact-finders in this case retained its authority to assess the credibility of the witnesses before it regardless of which party had the burden. *See Gould v. A-1 Auto, Inc.*, 2008 ME 65, ¶ 5 n.4, 945 A.2d 1225 (distinguishing between the fact-finder's duty to assess credibility and separately apply the burden of proof). The Board's findings with respect to credibility are a finding of fact. *Id.* ¶ 6.

Although the Towns did not have a burden in front of the Board, it was well within the Board's province to discuss and question the credibility of Mr. Traub's opinion when the Towns' brought him in to review Mr. Lagassa's assessment. Presumably, Mr. Traub's purpose was to discredit Mr. Lagassa's opinion. For that to happen, the Board must be satisfied that Mr. Traub's opinion was credible and, thus, it was perfectly appropriate for the Board to discuss their misgivings with his testimony. Thus, a fair

---

case, thus, the Law Court left open the possibility that if the Board as a whole ultimately relied on an incorrect standard of law, it could constitute reversible error.

reading of the deliberations suggests that the Board was appropriately assessing witness credibility when it determined that Mr. Traub had not raised enough concerns about Mr. Lagassa's opinion to convince them that the taxpayer, PPL, had not met its burden. The Court defers to the Board's finding that Mr. Traub's opinion was not credible because the finding is supported by "substantial evidence" on the record. 5 M.R.S.A. § 11007(4)(C)(5).

Even if certain comments were to be characterized as improper burden-shifting, the Court's task is to "analyze [the] deliberations in context," considering the record as a whole, to determine if the wrong legal standard was applied. *Martin*, 2008 ME 15, ¶ 14, 939 A.2d 110. On several occasions, Chairwoman Farnum and Assistant Attorney General Robert correctly stated the legal standard and validly confined the deliberations within that standard. (*See* Sept. Tr. 12, 22, 59, 60, 63, 64, 65-66.) It is also true that a majority ultimately voted "in favor that the taxpayer has offered credible evidence of value." (Sept. Tr. 82.) The written decision, furthermore, meticulously applied the facts and law.[8]

Moreover, the finding that the Board correctly applied PPL's burden to provide credible evidence of value is grounded in the evidence itself. The Towns maintain that Mr. Lagassa's appraisal was not based on sufficient evidence in the administrative record.

---

[8] The Towns suggest that even if the written decision did correctly state and apply the legal standard, it "does not accurately state the reasoning of the Board." (Reply Br. of Pet. 4.) The Towns cite to *Peaker v. City of Biddeford*, 2006 WL 5255444 (Me. Super. Oct. 18, 2006), where the Superior Court remanded a tax abatement case because it was unclear whether the written decision accurately captured the decision of the Board. In that case, the Board meeting was adjourned, there was no vote, and the board members reported their findings after the fact so that Chairman could produce a conceived consensus. *Id.* That case is unlike the one here where the members' findings were discussed and a vote was taken at the deliberations.

However, this Court is bound to uphold factual findings if there is "any competent evidence in the record to support [them]." *Concerned Citizens to Save Roxbury*, 2011 ME 39, ¶ 24, 15 A.3d 1263.

The parties, experts, and the Board agreed that the income approach should be given the most weight in the evaluation process.[9] They agreed that the future price of natural gas, which dictates the price of electricity, is a chief factor in determining the value of a hydroelectric dam under the income approach.[10] (Sept. Tr. 49.)

The main point of disagreement was about how to predict the rate at which the price for natural gas will change. On this point, Mr. Lagassa testified that the price of natural gas will go down in future years, (June Tr. 137), while Mr. Traub testified that the price will rise with inflation at about 2.5%, (June Tr. 240). Mr. Lagassa's theory was based on the United States Energy Information Administration's "Annual Energy Outlook."[11] (June Tr. 198.) The Board, in its written decision, found that Mr. Lagassa "appropriately considered both the rate of change of natural gas prices and inflation and

---

[9] Under Maine Law, assessors must consider three approaches in determining a property's market value: (1) the comparative or market data approach, (2) the income approach, and (3) the cost approach. *S. Portland Assocs. v. S. Portland*, 550 A.2d 363, 366-367 (Me. 1988).

[10] In fact, the Board addressed two additional factors it considered relevant under the income approach. In addition to predicting the rate of change of the price of natural gas, it considered: (1) how to establish the starting price point of electricity as of April 1, 2007, and (2) how to calculate the cost of debt and equity in the discount rate. The Court focuses on the first issue as it garnered the most attention from the Board.

[11] In Mr. Lagassa's own words: "The supply of natural gas is increasing and the demand is predicted to go up but not as quickly as the supply. One of the reasons is there are new discoveries of natural gas fields. Another reason is . . . there is new technology for sideways drilling which makes it possible to get more gas from the existing and from the future fields and another reason is the development (inaudible) by natural gas. So those three things together increase the supply quite profoundly . . . ." (June Tr. 187.)

11

that his reliance on the AEO report and calculation of the future price of electricity was reasonable and therefore credible." Mr. Lagassa also offered credible evidence regarding (1) how to establish the starting price point of electricity as of April 1, 2007, and (2) how to calculate the cost of debt and equity in the discount rate.

The Court is satisfied that "a reasonable mind" could accept Mr. Lagassa's opinion of value as adequate to support the decision in question. Thus, this Court upholds the Board's factual findings because they are based on competent evidence, and therefore withstand 80C review.

**The entry will be:**

    **The Court AFFIRMS the Board's decision.**

<table>
<tr><td>2/8/12</td><td></td></tr>
<tr><td>**DATE**</td><td>**SUPERIOR COURT JUSTICE**</td></tr>
</table>

Date Filed _10/25/10_ ___Kennebec___ Docket No. __AP10-56__
County

Action ___Petition for Review___
80C

# J. Murphy                    J. Mills -recused

Inhabitants of the Town of Milford et al <sup>vs.</sup> PPL, Maine LLC

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| William Dale Esq. <br> Ten Free Street <br> P.O. Box 4510 <br> Portland Maine 04112-4510 | Michele Roberts, AAG (Property Bd.) <br><br> - David Silk, Esq. <br> One Canal Plaza Suite 1000 <br> P.O. Box 7320 <br> Portland Maine 04112-7320 |

| Date of Entry | |
|---|---|
| 10/25/10 | Petition for Review, filed. s/Silk, Esq. |
| 10/28/10 | Entry of Appearance, filed. s/Silk, Esq. |
| 11/8/10 | Corrected Summary Sheet, filed. s/Dale, Esq. |
| 12/9/10 | **NOTICE AND BRIEFING SCHEDULE ISSUED** <br> Copies to attys. of record |
| 12/10/10 | Defendant PPL Maine LLC's Motion to Dismiss Plaintiffs' Complaint with Integrated Memorandum of Law, filed. s/Silk, Esq. <br> Proposed Order, filed. <br> Request for hearing, filed. s/Silk, Esq. |
| 12/20/10 | Plaintiff's Motion for Enlargement of Time to File Rule 80C Brief with Incorporated Memorandum of Law, filed. s/Dale, Esq. <br> Proposed Order, filed. <br> Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, filed. s/Dale, Esq. |
| 12/30/10 | Defendant PPL Maine, LLC's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, filed. s/Silk, Esq. <br><br> Notice of setting for 2/10/11 <br> sent to attorneys of record. |
| 1/7/11 | Defendant PPL Maine LLC's Opposition to Plaintiffs' Motion for Enlargement of Time, filed. s/Silk, Esq. |
| 1/13/11 | Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Enlargement of Time to File Rule 80C Brief, filed. s/Dale, Esq. |
| 1/14/11 | Certificate of Record, filed.    (in vault) |

| Date of Entry | Docket No. _____ |
|---|---|
| 2/10/11 | Oral arguments held with the Hon. Justice Robert Murray, presiding.<br>Tape 1396 Index 65-1048<br>William Dale, Esq. for the Petitioner and David Silk, Esq. for the Respondent.<br>Oral arguments made to the court. Court to take matter under advisement. |
| 2/22/10 | ORDER, Murray, J.<br>Accordingly, defendant PPL's motion to dismiss is hereby DENIED.<br>Petitioner's motion for an enlargment of time to file its brief is GRANTED.<br>Copies to attys. of record |
| 2/24/11 | Recording tapes, filed. (from the Property Board) |
| 3/2/11 | Petitioners' Motion to Modify Rule 80C Record and for Enlargment of Time to File Rule 80C Brief with Incorporated Memorandum of Law in Support There of, filed. s/Dale, Esq.<br>Affidavit of Sally J. Daggett, Esq., filed. s/Daggett, Esq.<br>Affidvit of Mark A. Bower, Esq., filed. s/Bower, Esq.<br>Proposed Order, filed. |
| 3/16/11 | Respondent PPL Maine, LLC's Motion to Reconsider with Integrated Memorandum of Law, filed. s/Silk, Esq.<br>Request for Hearing, filed. s/Silk, Esq.<br>Respondent PPL Maine, LLC's Opposition to Petitioners' Motion to Modify the Rule 80C record and Second Motion for Enlargment of Time to File Rule 80C Brief, filed. s/Silk, Esq.<br>Affidavit of David P. Silk, Esq. (attached exhibits A and B) |
| 3/23/11 | Petitioners' Reply to Respondent's Opposition to Motion to Modify Rule 80C Record and for Enlargment of Time to File Rule 80C Brief, filed. s/Dale, Esq. |
| 3/28/11 | Petitioners' Memorandum of Law in Opposition to Respondent's Motion to Reconsider, filed. s/Dale, Esq. |
| 5/5/11 | ORDER ON PETITIONER'S MOTION, Murray, J.<br>The clerk shall incorporate this order on the docket by reference pursuant to M.R.Civ.P.79(a)<br>Copies to attys. of record. |
| 5/11/11 | State Board of Property Tax Review picked up tapes per court order.<br><br>Notice of setting for 7/7/11<br>sent to attorneys of record. |
| 6/13/11 | State Board of Property Tax Review Hearing Transcripts, filed. s/Dale, Esq. |
| 6/20/11 | Letter regarding oral arguments, filed. s/Dale, Esq.<br>ORDER, Murray, J.<br>Remove from July motion list.<br>Copies to attys. of record. |
| 7/5/11 | Plaintiffs' Rule 80C Initial Brief, filed. s/Dale, Esq.<br><br>Notice of setting for 9/8/11<br>sent to attorneys of record. |
| 8/8/11 | Respondetn PPL Maine, LLC's Rule 80C Brief, filed. s/Silk, Esq. |

| Date of Entry | AP10-56<br>Inhab. of the Town of Milford vs. PPL, Maine LLC   Docket No. |
|---|---|
| 8/19/11 | Plaintiffs' Rule 80C Brief, filed. s/Dale, Esq. |
| 11/1/11 | Oral arguments scheduled 11/17/11 at 1:30 p.m.   Motion list mailed 10/28/11. |
| 11/17/11 | Oral arguments held.  J. Murphy, Attorney Dale, Attorney Silk.<br>Tape 1481, Index 1692-3305<br>Under advisement |
| 2/10/12 | ORDER ON RULE 80C APPEAL, Murphy, J. (2/8/12)<br>The Court AFFIRMS the Board's Decision.<br>Copies to attys. of record.<br>Notice of removal of record mailed to attys. of record |