2000 ME 166

**Bruce MARTON**

v.

**TOWN OF OGUNQUIT.**

Supreme Judicial Court of Maine.

Argued: Sept. 6, 2000.
Decided: Oct. 2, 2000.

Ralph Austin, Esq., Michael J. O'Toole, Esq. (orally), Woodman, Edmands, Danylik & Austin, P.A., Biddeford, for the plaintiff.

John P. McVeigh, Esq., Jeffrey T. Edwards, Esq. (orally), Preti, Flaherty, Beliveau, Pachios & Haley, Portland, for the defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] The Town of Ogunquit appeals from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) vacating the decision of the Ogunquit Zoning Board of Appeals; and thereby rescinding a stop work order, and allowing Bruce Marton to construct three amateur radio towers on his property. The Town argues that the Superior Court erred when it determined that a provision of the Ogunquit Zoning Ordinance permitted Marton

to construct his towers within fifty feet of the Residential Zone District boundary. We disagree and affirm the judgment of the Superior Court.

[¶ 2] On October 14, 1994, Bruce Marton received a Building Permit from the Town of Ogunquit's Code Enforcement Officer allowing Marton to construct up to four radio towers not in excess of ninety-nine feet on his property as indicated on Lot 8, Tax Map 6. Marton's thirty acres of property falls within two different zoning districts: the Residential District (RD) and the General Business District (GBD). The zoning ordinance required a permit applicant to seek Planning Board approval before constructing towers in the GBD Zone, but did not require Planning Board approval to construct radio towers in the RD Zone. *Compare* 1994 Ogunquit Zoning Ordinance, ch. 1, art. 13, §§ 1302.11 and 1305.2, [hereinafter 1994 Ordinance] *with* 1994 Ordinance, ch. 1, art. 8, § 802.3. Marton did not seek Planning Board approval.

[¶ 3] In April 1999, the CEO noticed ongoing construction of the towers on Marton's property and issued a stop work order, stating that Marton did not have a valid permit for the construction. Marton responded by sending the CEO a letter and a copy of the 1994 building permit allowing Marton to construct the towers. The CEO refused to rescind his stop work order, alleging that Marton's permit had lapsed; Marton appealed to the ZBA.

[¶ 4] The CEO asserted that Marton's permit was invalid either because construction was not continuous since 1994, or because Marton did not submit a building plan with his permit application, and that, therefore, Marton must obtain a new permit and Planning Board approval for the towers currently under construction.[1] The debate before the ZBA focused on whether Marton's 1994 permit limited the construction of his towers to the RD zone. The ZBA specifically avoided determining whether the permit was valid and instead affirmed the CEO's stop work order on the basis that the 1994 permit restricted construction to the RD Zone and Marton's design plan exceeded the scope of the permit because the plan he presented to the ZBA indicated that the towers were being constructed in the GBD zone.

[¶ 5] Marton appealed to the Superior Court pursuant to M.R. Civ. P. 80B. The Superior Court vacated the ZBA decision and rescinded the stop work order. The court deferred to the ZBA's factual finding that the permit did limit construction of the towers to the RD Zone, but noted that section 104.5 of the 1994 Ordinance allowed Marton's towers to extend fifty feet into the GBD.[2] The Town then filed this appeal.

[¶ 6] When the Superior Court acts as an intermediate appellate court, we review the decision of the fact finder, in this case the ZBA, directly. *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 7, 755 A.2d 485, 487. We will affirm a decision of the

---

1. If Marton were to obtain a new permit, he would have to apply under the 1999 Zoning Ordinance which would require Planning Board approval for his ninety-nine-foot towers, regardless of which zone they were to be located in, because the new Ordinance limits construction of ham radio towers in the RD to 50 feet and in the GBD to 80 feet. *See* 1999 Zoning Ordinance, amend., art. 2, § 9.17.

2. Section 104.5 of the 1994 Ordinance states: Where a zoning district boundary line divides a lot or parcel of land in the same ownership of record at the time such line is established by adoption or amendment of this Ordinance, the use regulations applicable to the less restricted portion of such lot may extend not more than fifty feet (50') into the restricted portion. This provision shall not, however, be applied when the more restrictive district is a Resource Protection District or the Shoreland Overlay District, nor when the less restricted portion lies within the Downtown Business District. The space and bulk regulations of the district shall apply to the land within those districts and are not subject to the fifty foot (50') provision.

Under the 1999 (the current) Zoning Ordinance, this section may be found in article 1, section 1.4(D).

ZBA unless we conclude that the ZBA erred as a matter of law, abused its discretion or made a factual finding not supported by substantial record evidence. *Juliano v. Town of Poland*, 1999 ME 42, ¶ 5, 725 A.2d 545, 547. The interpretation of a zoning ordinance presents us with a question of law which we review de novo. *Banks v. Maine RSA # 1*, 1998 ME 272, ¶ 4, 721 A.2d 655, 657. We interpret the ordinance by examining the plain meaning of the language. *Id.* The terms are to be construed " 'reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole.'" *Id.* (quoting *Gerald v. Town of York*, 589 A.2d 1272, 1274 (Me.1991)).

[¶ 7] At oral argument the Town conceded the validity of the permit, but maintained that the permit was intended to limit construction to the residential zone. As the Superior Court noted, section 104.5 of the applicable ordinance provides that "these regulations applicable to the less restricted portion of such lot may be extended not more than fifty feet into the restricted portion." The ZBA erred as a matter of law when it failed to recognize this provision of the ordinance.

[¶ 8] Marton argues, and the Superior Court reasoned, that the determination of which portion of his property is less restrictive should not be based on the total restrictions imposed upon each district, but rather, on the regulations imposed for each individual land use; *see supra* note 2 (quoting text of section 104.5). Marton postulates that the RD Zone is the less restricted portion in this instance because the construction of communications towers

within it is permitted without Planning Board approval, while Planning Board approval is required before one can construct towers in the GBD Zone. The Town disagrees and contends that section 104.5 requires a district's restrictiveness to be determined by the total restrictions imposed upon each district, and not on a use-by-use basis.

[¶ 9] Our review of this issue is *de novo. See Banks*, ¶ 4, 721 A.2d at 657. The Ordinance requires a determination of restrictiveness for each individual use. The plain language of the Ordinance supports this conclusion. *See id.* (stating that the Court first interprets an ordinance by giving effect to its plain meaning). Section 104.5 states, "the use regulations applicable to the less restricted portion of such lot may extend not more than fifty feet into the restricted portion." 1994 Ordinance, ch. 1, art. 1, § 104.5. The drafter's use of the language "use regulations" indicates that restrictiveness is to be determined by comparing each district's regulation with the property owner's intended use. Section 104.5 allows Marton to construct his towers fifty feet into the GBD Zone because the GBD Zone, in this instance, is the more restrictive district.[3]

The entry is:

Judgment affirmed.

---

3. Moreover, the Town's contentions lack merit. Determining restrictiveness on a district-by-district basis would be arbitrary in that a district would be less restrictive if it allows, in the aggregate, more permitted uses irrespective of the town's regulations for that individual use. For instance, if the Court interprets section 104.5 to require a district-by-district restrictiveness analysis, then the GBD is less restrictive than the RD because the RD has fewer permitted uses than the GBD. *Com-*pare 1994 Ordinance, ch. 1, art. 8, § 802 *with* 1994 Ordinance, ch. 1, art. 13, § 1302. In that instance, Marton would be unable to construct his towers fifty feet into the GBD because the RD would be the more restrictive district even though the RD is less restrictive in the use of amateur radios. Such an analysis would negate the purpose of zoning ordinances, that being to regulate individual land uses.