STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket Nos. AP-07-19 and
                                                        AP-07-21
                                                        TDW - CUM- 2/6/2008

ANITA LAMPRON, et al.,

        Plaintiffs,

        v.

TOWN OF STANDISH, et al.,

        Defendants,

_____        ORDER

ALAN CONNELL, et al.,

        Plaintiffs,

        v.

                                                        DONALD L. GARBRECHT
TOWN OF STANDISH, et al.,                                       LAW LIBRARY

        Defendants.                                             FEB 1 9 2008

Before the court are consolidated Rule 80B appeals by Anita Lampron et al. (the "Westerlea Way Plaintiffs") and by Alan R. Connell et al. (the "Hearthside Plaintiffs") from a March 6, 2007 decision by the Standish Zoning Board of Appeals (ZBA) approving an application by St. Joseph's College for a special exception to allow the College to construct five residence halls, an environmental field laboratory, and associated parking areas.

Neither the Westerlea Way Plaintiffs nor the Hearthside Plaintiffs object to the special exception as it concerns the proposed environmental field laboratory. The appeals concern the approval of the special exception as it pertains to the cluster of five

new residential buildings with three associated parking areas as shown on Tab 24 of the administrative record (R. Tab 24, Sheet 1).[1]

As demonstrated by maps and plans in the record, the College's proposal contemplates residential buildings of two stories each on the south side of Westerlea Way, with one parking area located between the new residences and the existing Alfond Center and two other parking areas located on the north side of Westerlea Way, immediately across from the first new parking area. The area between the proposed residential halls and associated parking areas and the property of the plaintiffs is generally wooded, and wooded buffer areas would be retained of at least 180 feet between the proposed residence halls and the Westerlea Way Plaintiffs and 240 feet between the proposed parking areas and the Hearthside Plaintiffs.

The College's application was considered at three ZBA meetings – on December 18, 2006, January 22, 2007, and February 26, 2007 – and was ultimately approved during a fourth meeting on March 6, 2007. The approval was subject to several conditions, including subsequent Planning Board site plan review and approval, a requirement that the College maintain a 240' wooded buffer between the parking areas and the Hearthside neighborhood and a 180' wooded buffer between the proposed residences and the nearest property of the Westerlea Way plaintiffs, and the construction of a turnaround (referred to as a cul de sac) on Westerlea Way. R. Tab 29.

---

[1] The existing campus is depicted on R. Tab 3, Sheet C100. The proposed residences and parking areas would be located immediately west of the existing campus area on Westerlea Way and are shown on R. Tab 3, Sheet 201 and on R. Tab 24, Sheet 1. (R. Tab 24 represents a slight modification of R. Tab 3, Sheet 201 in that a turnaround or cul de sac has been added). An aerial photograph with an overlay of the proposed residences and parking areas is contained in the record at R. Tab 24, Sheet 2. The Westerlea Way Plaintiffs are the owners of five lakefront cottages at the end of Westerlea Way, with the closest cottage approximately 150-200 yards away from the proposed new residential buildings. These cottages are visible on R. Tab 24, Sheet 2. The Hearthside Plaintiffs own property on Hearthside Road, which is a lane to the north of the campus, running roughly parallel to Westerlea Way. Their residences are also visible on R. Tab 24, Sheet 2.

The Westerlea Way and Hearthside Plaintiffs contend that the ZBA (1) failed to require the College to demonstrate that its development plan will promote the appearance, property, general health or general welfare of the Town, (2) improperly reconsidered the College's application after an earlier meeting resulted in a tie vote on the application, (3) failed to make findings in connection with its vote to reconsider, (4) applied incorrect legal standards, failed to make findings of fact, or otherwise improperly failed to evaluate certain of the project's effects, particularly as those applied to lighting and noise.

1.    Standard of Review

In reviewing the decision by the ZBA in this case, the role of the court is to determine whether the ZBA erred as a matter of law, abused its discretion, or made factual findings not supported by substantial evidence. *Marton v. Town of Ogunquit*, 2000 ME 166 ¶ 6, 759 A.2d 704, 706. The ZBA's interpretation of a municipal ordinance is reviewed *de novo* as a matter of law. *Isis Development LLC v. Town of Wells*, 2003 ME 149 ¶ 3, 836 A.2d 1285, 1287. The Board's decision to reconsider its earlier action is reviewed under an abuse of discretion standard. *Forbes v. Town of Southwest Harbor*, 2001 ME 9 ¶ 7, 763 A.2d 1183, 1186. Finally, factual findings by the Board must be upheld if there is any competent evidence in the record to support those findings. *York v. Town of Ogunquit*, 2001 ME 53 ¶ 14, 769 A.2d 172, 178.

2.    General Welfare

St. Joseph's College is located within Standish's Rural Residential District. Colleges are allowed uses within the Rural Residential District subject to ZBA special

3

exception approval. Ordinance § 184-4(D)(2).[2] To obtain special exception approval, an applicant must meet a two-pronged test:

1. Effect not adverse. That the use requested will not have an unreasonably adverse effect on the health, safety or general welfare of the residents of the area or the general public. In making this determination, the Board shall take into consideration the potential effect of the development on the environment from air, water or soil pollution; noise; traffic congestion; soil erosion; the burden on the sewage disposal or water supply systems or other municipal facilities, services or public ways; and any other relevant factors.

2. Value maintained. That the use requested will not significantly devaluate abutting property or property across a public or private way. In making its determination, the Board shall take into consideration the type of structure proposed; the topography of the area; the market value of surrounding real estate; the availability of utilities and transportation; the availability of schools and hospitals; traffic conditions; and any other relevant factors.

Ordinance § 181-64(A)(2)(a).

The Westerlea Way Plaintiffs contend, based on the definition of "special exception" in Ordinance § 181-3 that an applicant must also demonstrate that its proposed project would promote the "public health, safety, order, comfort, convenience, appearance, prosperity, or general welfare."[3] Interpreting the ordinance as a matter of law, the court concludes from the structure and language of the ordinance that the only two criteria that must be met are the "no adverse effect" and "maintain value" standards set forth in § 181-64(A)(2)(a). After reciting the general welfare language relied upon by plaintiffs, the definition of special exception specifically provides that uses promoting the general welfare "may be permitted if special

---

[2] Colleges are not permitted in any other district.
[3] It is unclear to the court whether this issue was raised before the ZBA.

4

provision for such special exception is made in this Part 1." § 181-3. In the immediately following section of the ordinance, colleges are expressly included within the category of permitted special exceptions in Rural Residential Districts. § 181-4(D)(2).

Moreover, the first prong of the special exception standards quoted above in § 181-64(A)(2)(a)[1] requires the applicant to demonstrate that the proposed use will not have "an unreasonably adverse effect on the health, safety, or general welfare of the residents of the area or the general public". The general welfare criterion is thus subsumed within § 181-64(A)(2)(a)[1] and does not need to be independently considered.

Finally, the Law Court has held that while ordinances frequently contain general statements of purpose such as those in the first sentence of the special exception definition, applicants are not required to show that their projects qualify under those general statements of purpose. *Stewart v. Town of Sedgwick*, 2002 ME 81 ¶ 12, 797 A.2d 27, 31.

3.    Reconsideration

Plaintiffs contend that after initially deadlocking 2-2 on the project at a January 22, 2007 meeting (thereby denying approval), the ZBA improperly voted to reconsider its action at its February 26, 2007 meeting. Thereafter, it reopened the public hearing and, at its final meeting on March 6, 2007, voted to approve the special exception.

The January 22, 2007 was a somewhat unruly and confused affair.[4] As counsel for the College notes in its brief, various motions were made, not all were voted on, and not all were seconded. In the wake of that meeting, moreover, the College sought

_____

[4] For example, after the public hearing portion of the meeting had closed, *see* R. Tab 15 at 63, members of the public continued to interject comments and questions. *See, e.g., id.* at 75-76, 80-82, 95-97, 98-99.

reconsideration pursuant to 30-A M.R.S. § 2691(3)(F), pointing out that considerable new material had been submitted by the project opponents during the January 22, 2007 meeting that the College had never had an opportunity to review and evaluate. After reviewing the record, the court concludes that the Board's February 26, 2007 decision to reconsider was not arbitrary or capricious or an abuse of discretion. *See Forbes*, 2001 ME 9 ¶ 10, 763 A.2d at 1197.

Plaintiffs advance two other arguments with respect to the reconsideration decision. First, they argue that because the College submitted a minor modification of its plan at the February 26, 2007 meeting, it was submitting a "new plan" not permitted on a motion to reconsider. The only difference apparent to the court, however, is that the new maps presented by the College depicted a circular turnaround at the site of the new residence halls to divert traffic from Westerlea Way. Previously no turnaround had been provided. *Compare* R. Tab 24, Sheets 1 and 2 with R. Tab 3, Sheet 201. The court is not aware of any authority for the proposition that such a modification would constitute a "new plan"; the College simply proposed a minor modification to alleviate traffic concerns that had been raised by the Westerlea Way Plaintiffs.

Plaintiffs also contend that the ZBA's vote to reconsider cannot be sustained because the ZBA did not issue separate findings with respect to its reconsideration vote. However, the court concludes that while findings of fact are statutorily required for any board "decisions," 30-A M.R.S. § 2691(3)(E), the statute draws a distinction between a "decision" – a determination on the merits of an application – and a "vote to reconsider." *See* 30-A M.R.S. § 2691(3)(F). Findings of fact are not statutorily required on a vote to reconsider – whether that vote is for or against reconsideration. The court has also reviewed the case law cited by plaintiffs and cannot find any requirement that discretionary procedural decisions – as opposed to decisions on the merits of an

6

application that are subject to the substantial evidence standard – must be accompanied by findings of fact.

4.    The Board's Express Findings

In its final written decision (R. Tab 29), the ZBA expressly considered the potential adverse effects of the project with respect to (1) water, soil, and air pollution, (2) noise, (3) traffic congestion, (4) soil erosion, and (5) septic issues. It found that the project would not have an unreasonably adverse effect on the health, safety, or general welfare of the residents of the area or the general public. R. Tab 29 at 3-4. Similarly, under the second prong of § 181-64(A)(2)(a) – requiring that the proposed use "not significantly devaluate [sic] abutting property or property across a public or private way" – the Board also made an express finding that there would be no significant devaluation and also found that the opponents of the project had not submitted any credible evidence to the contrary. R. Tab 29 at 4-5. As to all of these issues, notwithstanding plaintiffs' various arguments, the ZBA's findings are more than adequate, there is substantial evidence to support the ZBA decision, and the court is not permitted to independently review the record and substitute its own judgment even if it were to disagree with the manner in which the ZBA weighed the evidence.[5]

---

[5] The Westerlea Way plaintiffs argue in passing that the Chair of the Board improperly relied upon evidence not in the record. It is permissible for board members to draw on their general knowledge and experience. *See Adelman v. Town of Baldwin*, 2000 ME 91 ¶ 11, 750 A.2d 577, 582; *Pine Tree Telephone & Telegraph Co. v. Town of Gray*, 631 A.2d 55, 57 (Me. 1993). The Chair's comments here (R. Tab 15 at 66) were of a general nature and did not run afoul of the principle that decisions are to be based on the record.

7

5.    Lighting

No express findings were made by the ZBA on the issue of lighting. Plaintiffs argue that this was a "relevant factor" under Ordinance § 181-64(A)(2)(a)[1][6] and therefore that the Board's failure to consider lighting (or its failure to make findings as to lighting) was error.

The court has reviewed the record and, as far as it can tell, finds that the issue of lighting arose only twice during the four Board meetings on the College's application.[7] First, after public comments closed on January 22, 2007, an unidentified member of the audience interjected "don't forget lighting" and the same or another person asked, "Isn't [lighting] a relevant factor though?" R. Tab 15 at 75. This led to some further discussion of lighting, *id.* at 75-77, during which the Chair stated on several occasions that he believed lighting was a subject for the planning board, not the ZBA proceeding. *Id.*

Subsequently, at the February 26, 2007 reconsideration meeting, and apparently responding to this colloquy, an architect for the College explained how lighting effects could be minimized. R. Tab 22 at 93-95. At that point a resident of Hearthside responded that the lighting concepts just referred to "would be exactly what we would be looking for in the new design," but went on to complain that it was not yet included in the design as far as he could see and that the College had previously promised to conceal lighting in connection with other dormitories and had not done so. *Id.* at 95-96.

---

[6] That provision states that in making the determination as to whether the proposed use will have an unreasonably adverse effect on health, safety, or general welfare, the Board shall take into consideration five specific issues "and any other relevant factors." *Id.*

[7] The only other mention the court has found with respect to lighting is a statement by a Hearthside resident that her property values would go down "if all of a sudden I'm looking out my front door at a open field and a parking lot full of lights and kids." R. Tab 15 at 56. This remark did not raise lighting as a relevant issue independent of property values.

8

The court is of the view that if lighting is considered a "relevant factor" within the meaning of § 181-64(A)(2)(a)[1], then the Board should have expressly addressed lighting in its findings, and the court should remand this issue to the Board solely for findings on the issue of lighting. On this record, however, the court concludes that there is no basis for determining that lighting was a relevant factor with respect to the "health, safety, or general welfare" of the residents of the area or the general public. § 181-64(A)(2)(a)[1].

Specifically, the issue of lighting only arose after public comments had closed at the January 22, 2007 meeting. The record demonstrates that residents of the area surrounding the College were unhappy with what they perceived to be the College's failure to keep its past promises to use concealed lighting around other dormitories but there was no evidence offered that lighting affected their health or general welfare. It was also not disputed that concealed lighting could be employed and lighting could be shielded to avoid unintended light. Finally, according to the only board member who discussed this issue, lighting issues are considered to fall within the purview of the planning board during site plan review. A review of the applicable ordinance provisions substantiates this belief.[8]

Unless any issue raised in passing during the course of a special exception proceeding automatically becomes a relevant factor with respect to health, safety, and general welfare, the ZBA was entitled on this record to bypass the lighting issue. A contrary conclusion would eradicate the distinction between the issues to be considered

---

[8] In this connection, the College cites Ordinance § 181-73(E), which is not contained in the record but which the court can take judicial notice of because it appears on the Town's web site. *See* http://www.standish.org/Home/ – link to Code Book and eventually to http://www.e-codes.generalcode.com/codebook_frameset.asp?t=tc&p=1289%2D181%2Ehtm%23Section181%2D73%2E&cn=376&n=[1][144][257][376]

by the Planning Board during site plan review and the issues to be considered by the Board of Appeals on a special exception proceeding.

The entry shall be:

The March 6, 2007 decision of the Standish Board of Appeals is affirmed. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:    February __6__, 2007

Thomas D. Warren
Justice, Superior Court

Date Filed __03-20-07__ __CUMBERLAND__ Docket No. __AP-07-19__

County

Action __80B APPEAL__

CONSOLIDATED WITH AP07-21
ALL PLEADINGS TO BE DOCKETED AND FILED
IN AP07-19

ANITA LAMPRON
DANA LAMPRON
ALBERTINA WILSON
CYNTHIA WOOD
LOUIS WOOD JR
LOUIS WOOD SR
WESTERLEA WAY ASSOCIATION

TOWN OF STANDISH
TRUSTEES OF ST JOSHEPHS COLLEGE OF
MAINE

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| DAVID J PERKINS ESQ<br>PO BOX 449<br>PORTLAND ME 04112-0449<br>(207)871-7159 | THOMAS DOYLE ESQ<br>CATHERINE CONNORS ESQ ) St Josephs<br>NICHOLAS LIVESAY, ESQ<br>ONE MONUMENT SQUARE<br>PORTLAND ME 04101<br><br>SALLY DAGGETT, ESQ.<br>P.O. BOX 4510 (Town of Standish)<br>PORTLAND, MAINE 04112<br>775-7271 |

Date of
Entry

Date Filed __03-20-07__     __CUMBERLAND__     Docket No. __AP-07-21__

County

**CONSOLIDATED WITH AP07-19**
**ALL FURTHER DOCKETING AND FILINGS**
**TO BE IN AP07-21**

Action __80B APPEAL__

ALAN R CONNELL                          THE TOWN OF STANDISH
TEDD M GIFFORD                          THE TRUSTEES OF ST JOSEPHS COLLEGE
CAROLL A GIFFORD
STUART W JACKSON
JOSEPH W MCKENNA
MICHELLE P MCKENNA
MONTY D VOGEL

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JOHN C BANNON ESQ | Thomas Doyle Esq. |
| PO BOX 9785 | Catherine Connors Esq |
| PORTLAND ME 04104-5085 | Nicholas Livesay Esq |
| (207)773-5651 | One Monument Square |
| | Portland ME 04101 |

Date of
Entry