STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. AP-07-27

THERESA WIPER, et al.,

         Plaintiffs,

v.                                                ORDER

CITY OF SOUTH PORTLAND, et al.,

         Defendants.


Before the court is a Rule 80B appeal by Theresa and Donald Wiper from an April 25, 2007 decision by the Zoning Board of Appeals (ZBA) of South Portland granting the application of defendant Stephen Monaghan for a front and rear yard setback variance to expand his existing building at 24B Myrtle Lane[1] in the Willard Beach area of South Portland.

The court has carefully reviewed the record in light of the number of issues raised by the Wipers and the complicated procedural history of this case.

The variance application approved on April 25, 2007 is the fourth variance application submitted by Monaghan. All of his variance applications result from the fact that Monaghan's property is located in a Residential A zone where the minimum front and rear setbacks are specified at 20 feet. Monaghan's property has 108 feet of frontage on Myrtle Lane but is only 55 feet deep. This leaves Monaghan's property with a permissible building envelope of only 15 feet. The existing structure on the

---

[1] In a prior decision involving the same property it was referred to as 24B Myrtle Avenue. *See* *Wiper v. City of South Portland,* AP-05-10 (Superior Ct. Cumberland County), order filed October 31, 2005. The record in this case makes clear that Myrtle Lane is a spur off Myrtle Avenue. *See* R. Tab 2 at 10, 13. The plaintiffs' property is at 10 Myrtle Avenue but extends far enough back from Myrtle Avenue to abut Monaghan's property to the southeast. R. Tab 6 at 17; R Tab 2 at 10, 13, 22.

property, a small seasonal cottage constructed in the 1950s, already encroaches into the front setback by up to 4 feet and into the rear setback at various distances ranging from approximately 3 feet to approximately 8 feet.

1.    Procedural History

The tortured procedural history of this case began when Monaghan filed an initial variance request that was apparently rejected by a 3-3 vote. *See Wiper v. City of South Portland*, AP-05-10 (Superior Ct. Cumberland County), order filed October 31, 2005, at 1. Monaghan then modified his proposal and sought a variance that would have increased the height of the existing building to two and a half stories,[2] that would have encroached into the front setback by the same amount as the existing structure, and that would have increased the encroachment into the rear setback to 12 feet. The ZBA granted this application on January 5, 2005 and the Wipers, who are abutting landowners, appealed. On October 31, 2005 this court issued an order remanding the case back to the ZBA for further findings. *Wiper v. City of South Portland*, AP-05-10 (Superior Ct. Cumberland County), 2005 Me. Super. LEXIS 155.

On January 25, 2006 the Board held a hearing at which it made further findings but instead of approving Monaghan's requested variance, changed its decision and denied the variance. Monaghan then appealed this denial under Rule 80B. *Monaghan v. City of South Portland*, AP-06-10 (Superior Ct. Cumberland County). The Wipers intervened in AP-06-10, but while that appeal was pending Monaghan filed a third variance application, and in April 2006 the parties jointly requested that the appeal in AP-06-10 be stayed.

---

[2] Monaghan's original variance request would have increased the height to three stories.

Monaghan's third variance application requested a four-foot encroachment into the front setback and a 10-foot encroachment into the rear setback.[3] This application (which ZBA had originally denied as similar to Monaghan's second application but then agreed to hear on reconsideration) was ultimately denied by the ZBA on May 24, 2006, and Monaghan and his wife then appealed that decision. *Monaghan v. City of South Portland*, AP-06-33 (Superior Ct. Cumberland County). In that appeal Monaghan raised several constitutional claims. Around the same time Monaghan also filed an administrative complaint with the U.S. Department of Housing and Urban Development (HUD) alleging that South Portland was violating the Federal Fair Housing Act.

The Monaghans' HUD administrative complaint was resolved with a conciliation agreement in December 2006. The conciliation agreement provided that the Monaghans could file a new variance application which the Board was to review and decide in accordance with applicable law. In the meantime, the City and the Monaghans jointly agreed that judicial proceedings in AP-06-33, like those in AP-06-10, would be stayed.[4]

Monaghan filed his fourth variance application (the application now before the court) in February 2007. This application varied in several respects from Monaghan's previous applications but again sought a four-foot encroachment into the front setback and a 10-foot encroachment into the rear setback. A public hearing was scheduled on February 28, 2007 but on that date Monaghan requested and was granted a

---

[3] Neither the existing building on the property nor the structure proposed by Monaghan are exactly parallel to the property lines. *See* R. Tab 2 at 22. Accordingly, the proposed structure would encroach into the rear setback by approximately 10 feet at the northeast corner of the structure but by only 8 feet at the southeast corner of the structure. Similarly, the front of the proposed building would encroach into the front setback approximately 3.5 feet at the southeast corner and one foot at the northwest corner. *Id.* This would not encroach into the front setback any deeper than does the existing structure on the property.

[4] The Wipers did not intervene in AP-06-33.

3

postponement. The rescheduled hearing was held on March 28, 2007. Theresa Wiper submitted letters outlining her objections but was not present on March 28, 2007.[5] Donald Wiper was present on March 28, 2007 and spoke in opposition to the ZBA's consideration of Monaghan's most recent variance application.

On April 25, 2007 the ZBA granted Monaghan's variance application by a 5-1 vote subject to conditions that Monaghan connect the property to the public sewer and maximize the use of pervious areas on the site. The Wipers have appealed.

2.    Standard of Review

In this case the parties offer two competing narratives. Monaghan suggests that in an area where numerous other persons have routinely been granted variances, he is being subjected to determined opposition by abutters who are happy to see his property kept in an underdeveloped state. The Wipers intimate that Monaghan is attempting to steamroll the process and that he intimidated the Board by filing a fair housing complaint with HUD. The court is not going to choose between these narratives and believes the appropriate inquiry is whether the Board's April 25, 2007 decision to grant the Monaghan's February 2007 variance application is entitled to be affirmed under the applicable principles of judicial review.

Specifically, in reviewing the decision by the ZBA in this case, the role of the court is to determine whether the ZBA erred as a matter of law, abused its discretion, or made factual findings not supported by substantial evidence. *Marton v. Town of Ogunquit*, 2000 ME 166 ¶ 6, 759 A.2d 704, 706. The ZBA's interpretation of a municipal ordinance is reviewed *de novo* as a matter of law. *Isis Development LLC v. Town of Wells*,

---

[5] Counsel for the Wipers asserts that at the rescheduled hearing Wiper was present on February 28, 2007 when the case was postponed but could not be at the rescheduled hearing on March 28, 2007. The court, however, is limited to the record.

4

2003 ME 149 ¶ 3, 836 A.2d 1285, 1287. Factual findings by the Board must be upheld if there is any competent evidence in the record to support those findings. *York v. Town of Ogunquit*, 2001 ME 53 ¶ 14, 769 A.2d 172, 178.

At the outset the court will consider the parties' arguments relating to plaintiffs' standing and the ZBA's jurisdiction. It will then consider plaintiffs' challenges to the substance of the ZBA's decision.

3.    Standing

Standing must be considered as a threshold issue. If the Wipers to do not have standing, their appeal should be dismissed. To demonstrate standing, an appellant must show that he was a party to the administrative proceeding and that he suffered particularized injury as a result of the agency's decision. *Norris Family Associates LLC v. Town of Phippsburg*, 2005 ME 102 ¶ 11, 879 A.2d 1007, 1012. There is no dispute that as abutters the Wipers meet the low threshold of showing particularized injury. However, the City contends that the Wipers were not parties to the proceeding below (1) because Theresa Wiper did not attend the March 28, 2007 hearing and (2) because, although Donald Wiper was present on March 28, 2007, he addressed the Board only on whether it should consider Monaghan's latest variance application and did not address the substance of Monaghan's application.

The court concludes that the Wipers have standing in this case. The submission of letters by Theresa Wiper made her a sufficient participant in the proceeding. The court is not aware of authority requiring physical presence at a hearing so long as a party participates in some fashion and is not a stranger to the administrative proceeding. Moreover, Donald Wiper was present and spoke on March 28, 2007, and the court is not aware of authority that a person's ability to appeal is limited to the exact

5

topics on which he spoke.[6] *See generally Norris Family*, 2005 ME 102 ¶ 16, 879 A.2d at 1012 (participation may be formal or informal, in person or through an attorney); *Pride's Corner Concerned Citizens Association v. Westbrook Board of Zoning Appeals*, 398 A.2d 415, 417 (Me. 1979) (superimposing a formal structure of appearance and withdrawal upon an informal administrative proceeding before ZBA would be unrealistic).

4.  ZBA Jurisdiction

The Wipers contend that the ZBA did not have jurisdiction to consider the February 2007 variance application submitted by Monaghan pursuant to the Consideration Agreement for two reasons. First, they contend that it could not be considered because, they argue, it was virtually identical to the prior application which had been denied on May 24, 2006. This argument ignores the wording of Ordinance 27-38(i), which in the event of the denial of an appeal, precludes a second appeal of a similar nature within one year from the date of denial "<u>unless in the opinion of a majority of the Board</u>, substantial new evidence shall be brought forward, or <u>unless the Board finds in its sole and exclusive judgment that an error or mistake of law or misunderstanding of the facts shall have been made</u>" (emphasis added). R. Tab 7 at 14.

The Board's decision of whether to allow a second application would ordinarily be reviewed under an abuse of discretion standard. *Cf. Forbes v. Town of Southwest Harbor*, 2001 ME 9 ¶ 7, 763 A.2d 1183, 1186. However, in this case the express language delegating the issue of whether there had been a misunderstanding of facts to the "sole and exclusive judgment" of the Board precludes judicial review on this issue. The motion which passed the Board was that there had been some misunderstanding of the

---

[6] The City asserts that Donald Wiper left the hearing before the substance of the Monaghan's application was discussed, but offers no record support for that assertion, and the court is once again limited to the record.

facts. R. Tab 6 at 28. The Board has the right to protect itself from repetitive applications, but the court will not prevent the Board from considering a renewed application that the Board has exercised its discretion to consider after finding that there had been a misunderstanding as to the facts.

Plaintiffs' second argument on jurisdiction is that the ZBA lacked jurisdiction because a judicial appeal from the May 24, 2006 denial of Monaghan's prior application was still pending.

In *Gagne v. Inhabitants of Lewiston*, 281 A.2d 579, 583 (Me. 1971), the Law Court ruled that once an appeal had been taken, a zoning board of appeals did not have jurisdiction to correct the decision under appeal by adding findings of fact. That, however, is not this case. In this case, Monaghan had filed a new variance application, R. Tab 2, and the Board voted to hear that application even though it was filed less than a year after Monaghan's previous application.

Unless the filing of the appeal from the May 24, 2006 decision deprived the Board of jurisdiction to consider any new applications filed by Monaghan with respect to the same property, the Wipers' jurisdictional argument is unavailing. Jurisdiction is a bright line test. A board does not have jurisdiction to amend or modify a decision under appeal. A board does have jurisdiction to consider a new application if that is permissible under the ordinance and the board exercises its discretion to do so.

5.    Practical Difficulty

The South Portland ordinance provides in pertinent part that a variance from the ordinance's dimensional standards

> shall be granted when strict application of the ordinance to the petitioner and the petitioner's property would cause a practical difficulty and when the following conditions exist:

7

(i)      The need for a variance is due to the unique circumstances of the property and not to the general condition of the neighborhood;

(ii)      The granting of a variance will not produce an undesirable change in the character of the neighborhood and will not unreasonably detrimentally affect the use or market value of abutting properties;

(iii)      The practical difficulty is not the result of action taken by the petitioner or a prior owner;

(iv)      No other feasible alternative to a variance is available to the petitioner;

(v)      The granting of a variance will not unreasonably adversely affect the natural environment; and

(vi)      The property is not located in whole or in part within shoreland areas as described in M.R.S.A. Title 38, Section 435.

Ordinance § 27-36(b)(3), R. Tab 7 at 12.

The variance at issue in this case was a variance from dimensional standards (setback requirements) and therefore the "practical difficulty" standard, as opposed to the more stringent "undue hardship" standard, applies in this case.[7] Plaintiffs contend that the ZBA erred in concluding that strict application of ordinance requirements would cause a "practical difficulty" as that term is defined in section 27-36(b)(3) of the ordinance and in 30-A M.R.S.A. § 4353(4-C).

The practical difficulty standard is defined as follows in the South Portland Ordinance and in 30-A M.R.S.A. § 4353 (4-C):

As used in this subsection, "practical difficulty" means that the strict application of the ordinance to the property precludes the

---

[7] That the "practical difficulty" standard is intended to be "less stringent" than the undue hardship standard applicable to non-dimensional variances is evidenced by the legislative history of the 1997 amendment adding subsection 4-C to 30-A M.R.S.A. § 4353. *See* Statement of Fact, L.D. 1074, 118th Legis. (1997).

> ability of the petitioner to pursue a use permitted in the zoning district in which the property is located and results in significant economic injury to the petitioner.

Ordinance § 27-36(b)(3), R. Tab 7 at 12.

Plaintiffs argue that the ZBA erred in concluding both (1) that strict application of the ordinance would preclude Monaghan from pursuing a permitted use and (2) that strict application of the ordinance would result in significant economic injury to Monaghan.

The Wipers argue that because a single family home already exists on the property (albeit a small and outmoded seasonal cottage), the ZBA was not entitled to find that strict application of the ordinance to the property preclude the ability of the petitioner to pursue a use permitted in the zoning district. At the outset, however, even the existing structure does not comply with the ordinance. Indeed, strict application of the ordinance would require shrinking the existing building by 4 feet in the front and by up to 8 feet in the rear.

Moreover, there is competent evidence in the record to support the Board's findings (*see* R. Tab 6 at 73-78, R. Tab 1 at 2) that a practical difficulty exists. The Wipers conceded on the first appeal that the existing structure was originally designed as a small seasonal cottage and is not adequate in size for full time occupancy for a family of four. R. Tab 74 at 4. The Monaghan family is in fact larger than four, and there is competent evidence that enlargements necessary to house the Monaghan family could not be accomplished in compliance with the ordinance. R. Tab 2 at 3, R. Tab 6 at 30-31; R. Tab 24 at 69-70; R. Tab 33 at 35-36.

In addition, the test under the ordinance is not simply whether the property can somehow be used as a single family home but whether strict application of the ordinance precludes the ability "of the petitioner" to pursue a use permitted in the

9

zoning district. While there may be someone who would have the ability to live in a single-family residence under the ordinance dimensions, the ZBA was entitled to rely on evidence that Monaghan and his family – and most modern families – did not have that ability.

Similarly, there is competent evidence in Monaghan's testimony upon which the ZBA could rely in determining that the second half of the practical difficulty standard – that strict application of the ordinance would result in significant economic injury to petitioner – was met. Specifically, Monaghan explained that in the absence of permission to expand the structure, he was currently forced to rent it out at an economic loss. R. Tab 2 at 3; R Tab 6 at 31.


6.     Unique Circumstances of the Property - § 27-36(b)(3)(i)

The ZBA found in compliance with § 27-36(b)(3)(i), R. Tab 7 at 12, that the need for a variance is due to the unique circumstances of the property and not to the general condition of the neighborhood. *See* R. Tab 1 at 12-13. There is substantial evidence to support this finding, which is based on the narrowness of the lot, its placement at the end of a narrow lane, and the fact that the existing house is the smallest house on this size lot in the neighborhood.

The Wipers appear to suggest that "the neighborhood" should be limited to the six homes on Myrtle Lane, but the ZBA properly considered a wider geographical scope. Even on Myrtle Lane, however, the Monaghan lot is the only property with both a large frontage/narrow width lot and a small house at the bottom of a narrow dead-end lane.

The Wipers also argue that because numerous variances have been granted in the Willard Beach area (R. Tab 36, 63, 67-72), any constraints must be caused by the general

10

condition of the neighborhood rather than the unique circumstances of Monaghan's property. The court cannot presume, however, that because a number of variances have been granted in the same area, those variances are not due to unique circumstances of the specific properties in question. The Wipers are asking the court to assume from the fact that other variances have been granted that the ZBA has exhibited a consistent disregard of the requirements of § 27-36(b)(3)(i). However, the circumstances of the other variances are not before the court, and the court concludes that there is a sufficient basis in the record to support the Board's finding that there are unique circumstances with respect to the Monaghan lot.

7.  **Variance Will Not Produce Undesirable Change in Character of Neighborhood and Will Not Unreasonably Affect Market Value of Abutting Properties - § 27-36(b)(3)(ii)**

The Board expressly found that there are many 3-story houses in the neighborhood and that granting a variance to Monaghan "will permit an increase in house size and modernization that will be in harmony with the other houses in the area." R. Tab 1 at 13. There is competent evidence in the record to support this finding, particularly evidence demonstrating that even after Monaghan's proposed renovations, his dwelling will still fall below the median size of the structures in the neighborhood, *see* R. Tab 2 at 10; R. Tab 24 at 77-78, and that the distance between his proposed dwelling and adjacent houses would be congruent with the general proximity of structures in the neighborhood. R. Tab 2 at 10; R. Tab 24 at 60-63.

With respect to the second prong of § 27-36(b)(3)(ii) – that there will be no unreasonable detrimental effect on the use or market value of abutting properties – the Board's finding is adequately supported in the record. R. Tab 1 at 13: *see* R Tab 2 at 3-4; R. Tab 6 at 32-33, 59; R Tab 8; R. Tab 17 at 35-36, 42-43; R. Tab 24 at 26-28, 60-63.

11

Regardless of contrary evidence, the ZBA was specifically entitled to rely on evidence that the improvements to the Monaghans' property would enhance the market value of abutting properties. R. Tab 17 at 35-36; 42-43.


8.   Practical Difficulty Not the Result of Action Taken by Petitioner or Prior Owner - § 27-36(b)(3)(iii)

On this issue the Wipers agree that the lot size and configuration are not the result of action taken by Monaghan or a prior owner. Plaintiffs' Rule 80B Brief at 23. However, they contend that the ZBA also relied on the condition and size of the existing house which, they contend, did result from action (or rather, they suggest, inaction) by the prior owners. However, if prior knowledge of zoning restrictions is not enough to result in a self-created hardship, *Twigg v. Town of Kennebunk*, 662 A.2d 914, 918 (Me. 1995), Monaghan's variance application cannot be denied because Monaghan purchased the property knowing that the existing dwelling was small and old.[8]

In the court's view, moreover, the Wipers' contention that the smallness and age of the existing dwelling resulted in practical difficulty that was created by the prior owners of Monaghan's property is not entitled to serious consideration. The court disagrees that "inaction" by an owner of property can be the equivalent of action resulting in the creation of a practical difficulty for purposes of § 27-36(b)(3)(iii). That is certainly true with respect to the age and condition of an existing dwelling. The record reflects that the existing house was built prior to the enactment of the setback requirements at issue, and the prior owners cannot be faulted for not building a structure sufficiently large so that Monaghan would not now need to expand the

---

[8] *See Rocheleau v. Town of Greene*, 1998 ME 59 ¶ 5 n.1, 708 A.2d 660, 662 n.1 ("knowledge of zoning restrictions by a purchaser of a non-conforming lot, without more, will hardly ever constitute a self-created hardship.")

existing envelope.  Nor can they justifiably be faulted for the age of the dwelling.

Owners of buildings are not required to continuously renovate or modernize.


9.      No Other Feasible Alternative - § 27-36(b)(3)(iv)

The fourth specified condition that must be met for a dimensional variance is

that [n]o other feasible alternative to a variance is available to the petitioner.  On this

issue the ZBA found in Monaghan's favor:

> Without a variance, given the unusual dimensional
> orientation of the lot, a livable home for a modern family
> cannot be built on the property.  The home currently on the
> property is outdated and not functional by modern
> standards.  A house built within the building envelope
> would not be in harmony with the character of the
> neighborhood and would not meet the needs of the
> applicant's family.  The garage must face Myrtle Avenue for
> sufficient turnaround space; there is not enough room to
> direct the garage sideways – several trees would have to
> come down and the paved area would have to be increased.

R. Tab 1 at 13-14.

This is an issue on which the parties sharply disagree.  The Wipers contend that

the ZBA is required to determine that there is no other feasible alternative to the

particular variance sought.  Monaghan argues that this criterion only requires that there

be no feasible alternative to the granting of some variance and that under this criterion

the ZBA is not required to engage in an extensive inquiry as to whether an alternative

variance would be preferable to the variance sought by the applicant.

Based on the wording of the ordinance, Monaghan has the better of this

argument.  The ordinance – and the governing statute, 30-A M.R.S.A. § 4353(4-C)(D) –

requires that there be "no feasible alternative to a variance" (emphasis added); it does

13

not state that the petitioner must show that there be no feasible alternative to the particular variance sought.[9]

In the alternative, even if the ZBA were permitted to consider whether a smaller variance would be feasible under § 27-36(b)(3)(iv), that provision must be given a practical interpretation. The ZBA cannot be expected to require the submission and review of numerous different designs to determine, for example, whether a variance that is one or two feet narrower should be approved instead. In this case there was adequate evidence that, given the Monaghan family's needs, there was no feasible alternative to the variance requested. The ZBA was entitled to conclude that the suggestions of opponents that, for example, the Monaghans could do without a garage[10] did not constitute a feasible alternative.

In their brief, plaintiffs argue that the Board erred in not requiring a redesign once a sewer hookup was made a condition of the application and the setback to the existing septic system no longer needed to be maintained. There are two answers to this contention. The first is that the sewer condition was imposed for environmental reasons during the course of the variance hearing. If the variance application was otherwise satisfactory, the Board was not required to subject the applicant to a further redesign process once it added that condition. In addition, during the proceedings before the Board consideration was given to whether Monaghan should be restricted to a long and narrow design – which would have been the result of maintaining existing setbacks but using more of the length of the site without the existing septic constraint.

---

[9] This does not mean, however, that once the need for some variance has been shown, a petitioner can then proceed with the largest possible structure that can be built. The ZBA can prevent outlandishly large variances, for example, by rejecting variances that would produce an undesirable change in the character of the neighborhood, § 27-36(b)(3)(ii). The ZBA can also protect against unreasonable variances by its ability under § 27-36(b)(1) to attach "conditions and safeguards as are appropriate under this chapter" to any variance approval.

[10] *See* Plaintiffs' 80B Brief at 26.

*See, e.g.,* R. Tab 17 at 32, 43 (reference to long narrow house as "monstrosity bowling alley"). The ZBA specifically found that a long narrow house built within the building envelope "would not be in harmony with the character of the neighborhood." R. Tab 1 at 14.

10. <u>No Unreasonable Adverse Environmental Effects - § 27-36(b)(3)(v)</u>¨

The Board's finding that there would be no unreasonable adverse environmental effects is supported by the condition that the applicant tie into the existing city sewer system, by the drainage improvements proposed by Monaghan, and by the additional condition that porous surface materials be used to absorb runoff. R. Tab 1 at 14; R. Tab 2 at 4, 22; R. Tab 6 at 34, 43, 45.

The entry shall be:

The April 28, 2007 decision of the South Portland Board of Appeals granting Stephen Monaghan's February 2007 variance application is affirmed. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     March _5_, 2008

Thomas D. Warren
Justice, Superior Court

15

Date Filed __05-11-07__ __CUMBERLAND__ Docket No. __AP-07-27__
County

Action __80B APPEAL__

THERESA WIPER                          THE CITY OF SOUTH PORTLAND
DONALD WIPER                           STEPHEN MONAGHAN


                                  vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| NATALIE L BURNS ESQ<br>JENSEN BAIRD GARDNER & HENRY<br>PO BOX 4510<br>PORTLAND ME 04112<br>(207)775-7271 | MARY KAHL ESQ (CITY OF OUTH PORTLAND)<br>PO BOX 9422<br>SOUTH PORTLAND ME 04116-9422<br>(207)767-7605<br><br>SARAH A MCDANIEL ESQ(MONAGHAN)<br>MURRAY PLUMB & MURRAY<br>PO BOX 9785<br>PORTLAND ME 04104-5085<br>(207)773-5651 |

Date of
Entry